IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEFENDERS OF WILDLIFE, et al. )
                                )
        Plaintiffs, )
                                  )
        v. )
                                  )
GALE NORTON, et al. )
                                  )     Case No. 06-cv-00180 (HHK)
        Defendants, )
                                  )
SAFARI CLUB INTERNATIONAL, )
SAFARI CLUB INTERNATIONAL )
FOUNDATION )
                                  )
        Defendant-Intervenor )
        Applicants. )
———————————————————— )

**MOTION OF SAFARI CLUB INTERNATIONAL AND
SAFARI CLUB INTERNATIONAL FOUNDATION
TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT**

Safari Club International ("SCI") and Safari Club International Foundation
("SCIF") (collectively "SCI"), by and through counsel, move pursuant to Federal Rule of
Civil Procedure 24 to intervene as a defendant. In this lawsuit, Plaintiffs Defenders of
Wildlife *et al.* ("DOW") seek declaratory and injunctive relief to force the U.S. Fish and
Wildlife Service ("FWS") to list the Florida Black Bear under the Endangered Species
Act, 16 U.S.C. §§ 1531-1544 ("ESA"). DOW challenges one aspect of the FWS's
decision not to list the Florida Black Bear under the ESA, specifically the FWS's
decision on remand from this Court in the case of *Defenders of Wildlife et al. v. Norton,*
Case No. 99-02072, that regulatory mechanisms existing in 1998 were adequate to

protect the species.[1]  The FWS Decision not to list the Florida Black Bear appears in the
Federal Register as *Endangered and Threatened Wildlife and Plants; Reexamination of
Regulatory Mechanisms in Relation to the 1998 Florida Black Bear Petition Finding*, 69
Fed. Reg. 2100-2108 (Jan. 14, 2004) ("Florida Black Bear Finding").

Intervention is warranted because a population of Florida Black bear inhabits an
area in southern Georgia and because members of SCI have definite plans to legally hunt
that population this year and in subsequent years.  If Plaintiffs are successful in this
litigation and the FWS ultimately is forced to list the Florida Black Bear under the ESA,
it will be illegal to "take" (*e.g.,* hunt) Florida Black Bear.  The disposition of this case
may impair the interests of SCI members in hunting the Florida Black Bear and the
interests of SCI and SCIF in promoting sustainable use hunting as a viable conservation
and wildlife management tool.  The Federal Defendants, who are concerned with all
aspects of their decision not to list and who are answerable to a broad constituency of
those interested in Florida Black Bear conservation, cannot adequately represent SCI's
focused interests.  Thus, as further explained below, the Court should grant SCI's motion
to intervene as of right or, alternatively, permissively.

Pursuant to L.Cv.R. 7.1(m), counsel for SCI has contacted counsel for DOW and
for the Federal Defendants with respect to their position on this Motion.  DOW's counsel
states that Plaintiffs can take no position until they have an opportunity to review this
motion to intervene.  Federal Defendants' counsel states that Federal Defendants take no
position on the motion to intervene.  Lodged with this Motion is SCI's proposed Answer
to Plaintiffs' Complaint.

---

[1] Nineteen Ninety-Eight is the year of the FWS's initial decision not to list the species.

I.    STATEMENT OF FACTS AND RELEVANT LAW

A.    Proposed Intervenors Safari Club International and Safari Club International Foundation

SCI and the individual members of SCI have strong interests in upholding the FWS's decision not to list the Florida Black Bear under the ESA. SCI is a nonprofit corporation incorporated in the State of Arizona, operating under § 501(c)(4) of the Internal Revenue Code, with principal offices and place of business in Tucson, Arizona.[2] SCI's Governmental Affairs Office is located in Washington, D.C. SCI's membership includes approximately 45,000 individuals from the United States (including Georgia and Florida) and many countries around the world who are hunters, sportsmen and women, and conservationists. SCI has members who legally hunt the Florida Black Bear in southern Georgia. SCI's missions are the conservation of wildlife, protection of the hunter, and education of the public concerning hunting and its use as a conservation tool.[3]

SCI carries out its conservation mission through its sister organization, Safari Club International Foundation. SCIF is a non-profit corporation, incorporated in the State of Nevada, operating under § 501(c)(3) of the Internal Revenue Code, with principal offices and place of business in Tucson, Arizona.[4]   Its missions are conservation of wildlife, education of the public concerning hunting and its use as a conservation tool, and humanitarian services. The conservation mission of SCIF is: (a) to support the conservation of the various species and populations of game animals and other wildlife and the habitats on which they depend, and (b) to demonstrate the

---

[2] Declaration of Kevin Anderson, ¶ 3 ("Anderson Decl."), Exhibit 1.

[3] *Id.* ¶¶ 3-4.

[4] *Id.* ¶ 3.

importance of hunting as a conservation and management tool in the development,

funding and operation of wildlife conservation programs.[5]

The conservation mission of SCIF is carried out by the SCIF professional staff in

the SCIF Department of Wildlife Conservation under the guidance of the SCIF

Conservation Committee. The activities include scientific research, enhancement of

science-based wildlife management capacity range states, and the compilation and

dissemination of data. A significant percentage of SCI and SCIF's annual revenues,

including a portion of the dues and fees paid by each member, goes to support SCIF's

conservation efforts around the world. For the year 2003, for example, SCI allocated

$1.3 million of its annual budget for conservation projects and expenses. In addition,

each individual chapter of SCI provides its own funding for conservation efforts locally

and across the globe.

On staff in SCIF's Washington, D.C. Conservation Department Office is a

professional wildlife biologist with more than thirty years of experience working with

state wildlife management agencies and professional conservation organizations. He

designs, coordinates, supervises and monitors SCIF's conservation efforts in the United

States and around the world. In addition, SCIF contracts with independent authorities in

a variety of biological and related areas to provide SCIF with cutting-edge data and

analysis in the fields of conservation and wildlife management.

SCI and SCIF's conservation efforts focus on the concept of "sustainable use" of

wildlife. "Sustainable use" recognizes that the utilization of wildlife often produces

benefits that provide incentives for conservation. SCIF's biologists have established that

---

[5] *Id.* ¶¶ 3-4.

conservation not only does not require non-use, but that non-use can actually be counter-productive to conservation efforts. Well-managed hunting has been, and in the case of black bear hunting in many states in the eastern United States and elsewhere, continues to be a valuable tool in conservation and protection of black bear and many other game species and their associated habitats and biodiversity. SCI and SCIF intervened to successfully defend black bear management and conservation through hunting in New Jersey and Maryland. SCIF has also supported multiple black bear research projects in North America as well as brown bear conservation and research in Alaska and Russia.[6]

### B.    The Interests of SCI Members in this Litigation

Members of SCI have in the past hunted and currently intend to hunt the Florida Black Bear, including in the season set for several weekends in September and October 2006. Since at least 1981, the State of Georgia has allowed the hunting of Florida Black Bear in southern Georgia counties around the Okefenokee Swamp.[7] The Georgia Department of Natural Resources carefully manages this hunt, including by limiting the take to one bear and prohibiting the taking of a female with cubs and of cubs under 75 pounds.[8] The 2006 season is scheduled for September 28-30, October 5-7, and October 12-14 for five counties and the Dixon Memorial Wildlife Management Area ("WMA"), and November 9-11 in the Dixon Memorial WMA.[9]

As demonstrated by the attached declarations of Lee Davenport, Lamar William Monts do Oca, Randal Morris, James Petrina, and Robin Thigpen, members of SCI have

---

[6] *See generally id.* ¶¶ 4, 7.

[7] Declaration of Douglas S. Burdin, ¶¶ 2, 4 & Attachment 3 to that Declaration ("Burdin Decl."), Exhibit 2.

[8] *See id.,* Attachment 1 (Georgia Hunting Regulations, 391-4-2.69(3)); Florida Black Bear Finding, 69 Fed. Reg. at 2103 (describing Georgia's bear hunting program).

[9] Burdin Decl., ¶ 2, Attachment 2.

interests in the Florida Black Bear, in participating in upcoming Florida Black Bear seasons, and in supporting SCI's participation in this litigation. Each of the declarants is a member of SCI; has been a sportsman and hunter for decades; and has hunted numerous species in Georgia, Florida, other states, and around the world. Four of the five declarants have hunted Florida Black Bear in southern Georgia in the past and all have definite plans to hunt the species this September and October 2006. All have the necessary licenses – the Georgia general hunting license and big game license – and equipment. Lamar William Monts de Oca and James Petrina belong to a hunting club that has in the past leased and this year will lease about 5,000 acres of land for the purpose of establishing a base to hunt the Florida Black Bear. The other declarants will hunt on leased land or on public or private lands in southern Georgia. All the declarants intend to hunt between one and three of the weekends of the season, or until he takes his one-bear limit. [10]

All the declarants intend to hunt beyond the 2006 season if, as expected, Georgia establishes a new season as it has for 25 years. Each of the declarants understands that if the FWS lists the Florida Black Bear under the ESA, it would effectively end the hunting of the species in southern Georgia and preclude the State of Florida from reestablishing a season.[11] Not only would listing the Florida Black Bear directly eliminate their

---

[10] Declaration of Lee Davenport, ¶¶ 2-6 ("Davenport Decl."), Exhibit 3; Declaration of Lamar William Monts de Oca, ¶¶ 2-8 ("Monts de Oca Decl."), Exhibit 4; Declaration of Randal Morris, ¶¶ 2-6 ("Morris Decl."), Exhibit 5; Declaration of James Petrina, ¶¶ 2-7 ("Petrina Decl."), Exhibit 6; Declaration of Robin Thigpen, ¶¶ 2-6 ("Thigpen Decl."), Exhibit 7.

[11] Davenport Decl., ¶¶ 7-8; Monts de Oca Decl., ¶¶ 9-10; Morris Decl., ¶¶ 7-8; Petrina Decl., ¶¶ 8-9; Thigpen Decl., ¶¶ 7-8. Florida ended the hunting of the Florida Black Bear in 1993, but had allowed it before that time. 69 Fed. Reg. at 2102; Monts de Oca Decl., ¶ 6.

recreational opportunities, but also it would prevent the declarants from participating in the sustainable use conservation of this species, a use that has occurred in southern Georgia for at least 25 years.

### C.    The Endangered Species Act

The ESA directs the Secretary of the Interior to classify a species as "endangered" when one or more of five designated risk factors place the species in danger of extinction throughout all or a significant portion of its range. The Secretary must classify a species as "threatened" if one or more of the five factors make it likely to become endangered within the foreseeable future throughout all or a significant portion of its range. 16 U.S.C. §§ 1532(6), (20) & 1533(a)(1). The factors include:

> (A) the present or threatened destruction, modification, or curtailment of its habitat or range;
> (B) overutilization for commercial, recreational, scientific, or educational purposes;
> (C) disease or predation;
> (D) the inadequacy of existing regulatory mechanisms; or
> (E) other natural or manmade factors affecting its continued existence.

Id. § 1533(a)(1). Once a species is listed as "endangered" or "threatened," the ESA and FWS regulations prohibit certain actions with respect to that species, including the "taking" of that species within the United States. Id. § 1538(a)(1)(B); 50 C.F.R. § 17.31(a) (applying most of the prohibitions applicable to endangered species to threatened species).[12] To take is "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." Id. § 1532(19) (emphasis added). The FWS has defined "harm" as "an act which actually kills or injures

---

[12] The statute's prohibition against the "taking" of an endangered or threatened species is not absolute. The FWS may issue a "permit" to allow certain action prohibited by the ESA, but only if certain conditions are met. 16 U.S.C. § 1539(a)(1)(A).

wildlife." 50 C.F.R. § 17.3. The listing of the Florida Black Bear would effectively end

the legal hunting of the species in Georgia and preclude the State of Florida from opening

a season in the future.

> **D.     The Previous Litigation Over the Decision Not to List the Florida
> Black Bear and the FWS' Second Decision Not to List**

On December 8, 1998, the FWS published a 12-month finding in which it stated

its determination that listing the Florida Black Bear was not warranted. *Endangered and*

*Threatened Wildlife and Plants; New 12-month Finding for a Petition to List the Florida*

*Black Bear,* 63 Fed. Reg. 67613-67618 (Dec. 8, 1998).  DOW and others filed a lawsuit

in this Court challenging that decision.  This Court upheld most aspects of FWS's

decision but remanded the decision to the agency to address a single issue.  The Court

directed the FWS to explain better and to reexamine the regulatory mechanisms on which

the FWS relied in determining that the regulatory mechanisms existing in 1998 were

adequate to justify not listing the species:

> As a result, this case must be remanded to the Agency so that the Wildlife
> Service can examine only regulatory mechanisms which are currently
> being undertaken and enforced.  Additionally, the Agency must indicate
> on the record the regulations upon which it bases its decision.

Memorandum Opinion, *Defenders of Wildlife et al. v. Norton,* Case No. 99-02072, at 21-

22 (D.D.C. Dec. 13, 2001).

Consistent with this Court's remand order, the FWS conducted a reexamination of

the regulatory mechanisms in effect at the time of its original 1998 decision.  In a detailed

and thorough analysis, the FWS again concluded that the regulatory mechanisms in

existence in 1998 are not inadequate and therefore do not support the listing of the

Florida Black Bear.  Florida Black Bear Finding, 69 Fed. Reg. at 2101-08.[13]  DOW filed

the present lawsuit challenging only the decision concerning the adequacy of the 1998

regulatory mechanisms, essentially arguing that the FWS should gone beyond the

requirements of this Court's remand order and should have examined the regulatory

mechanisms that existed in 2004, at the time of the Federal Register notice in which the

FWS responded to the requirements of this Court's remand.

## II.    STATUS OF THE LITIGATION

Plaintiffs filed their Complaint on February 2, 2006.    Defendants must file their

response to this Complaint within 60 days of service of that pleading.  To SCI's

knowledge, no other pleadings or motions have been filed between the date of the filing

of the Complaint and this Motion to Intervene.

## III.   ARGUMENT

### A.    SCI is Entitled to Intervene As of Right Under Federal Rule 24(a)(2)

The relief that DOW seeks in this case will impair the interests of SCI and SCI

members, including interests in hunting the Florida Black Bear in southern Georgia and

promoting hunting as a sustainable use of the species.  The existing parties do not

adequately represent these interests.  Thus, SCI is entitled to intervene as of right under

Fed. R. Civ. P. 24(a), which states, in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an
> action . . . when the applicant claims an interest relating to the property or
> transaction which is the subject of the action and the applicant is so
> situated that the disposition of the action may as a practical matter impair
> or impede the applicant's ability to protect that interest, unless the

---

[13] The FWS "also included as footnotes, separate from our court-ordered reexamination, updates on several regulatory mechanisms that have been revised since 1998 in an effort to provide the best available information regarding protections for the Florida black bear." 69 Fed. Reg. at 2101.

applicant's interest is adequately represented by existing parties.

The D.C. Circuit has established that intervention as of right depends on consideration of five factors: (1) the timeliness of the motion; (2) an interest in the property or transaction that is the subject of the action; (3) a possible impairment of the ability to protect that interest; (4) whether that interest is adequately represented by the existing parties; and (5) Article III standing. *Fund for Animals v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003). Each of these five factors supports granting intervention.

### 1.    This Motion is Timely

By filing in advance of any substantive actions in this case, SCI has moved to intervene in a timely fashion. Timeliness is a matter left to the Court's discretion and is to be "determined from all the circumstances" relevant to the case. *NAACP v. New York*, 413 U.S. 345, 366 (1973). Of significance to the court's consideration are the age of the case, whether responsive pleadings or dispositive motions have been filed, the purpose for which intervention is being sought, and whether intervention will cause prejudice to the existing parties to the action. *Id.* at 366-69; *NRDC v. Costle*, 561 F.2d 904, 907-08 (D.C. Cir. 1977).

This litigation is still in the earliest stages. The Federal Defendants have not yet responded to the Complaint and no dispositive motions have been filed.   As SCI will abide by all briefing schedules and limit itself to the issues raised in this case, no prejudice will come to any party from the granting of this motion at this stage of the litigation. *See NAACP*, 413 U.S. at 366. Consequently, this Motion to Intervene meets the timeliness prerequisite.

2.    **SCI and SCI's Members Have Substantial Interests in the Florida Black Bear, the Subject Matter of this Case**

SCI and SCI members have interests in the hunting and sustainable use conservation of the Florida Black Bear, interests sufficient to allow intervention of right. For intervention as of right, a party must assert an interest in the subject matter of the suit. *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981). The interest need not be a direct one in the property or transaction at issue, provided that it is an interest that would be impaired by the outcome of the litigation. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135-36 (1967). The D.C. Circuit has explained that '[t]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

The subject matter of this lawsuit is the Florida Black Bear, and specifically whether the FWS acted within its discretion in deciding, based on the applicable regulatory mechanisms in place, not to list that species under the ESA. Listing the species would effectively terminate the hunting of the species in southern Georgia (and would preclude Florida from reestablishing a season). As discussed in greater detail in Section I.B. and Exhibits 3-7, individual members of SCI have definite plans to hunt the Florida Black Bear in southern Georgia this year and in subsequent years.[14] The courts have repeatedly held that a recreational interest in the species that is the subject matter of the litigation constitutes a sufficient interest for establishing a right to intervene (or the related interest for establishing Article III standing). *Fund for Animals v. Norton*, 295 F.

---

[14] See Davenport Decl., ¶¶ 6-7; Monts de Oca Decl., ¶¶ 7-9; Morris Decl., ¶¶ 6-7; Petrina Decl., ¶¶ 6-8; Thigpen Decl., ¶¶ 5-7.

Supp. 2d 1, 2 (D.D.C. 2003) (noting that the court had earlier in the case allowed intervention of SCI and other hunting organizations in a lawsuit concerning game animal); *Fund for Animals v. Patton,* 1998 WL 34202233, *2 (W.D.Ky. 1998) ("The prospective intervenors . . . have an interest in preserving the current nomination process and in preserving their current right to legally hunt and fish."); *Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113, 1119 (9th Cir. 2005) ("The 'injury in fact' requirement in environmental cases is satisfied if an individual adequately shows that she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that that interest is impaired by a defendant's conduct.") (citation omitted); *Sierra Club v. U.S. Fish and Wildlife Service,* 235 F. Supp. 2d 1109, 1124 (D. Ore. 2002) (declaration that member of organization "has hiked and hunted in these areas, that he intends to hunt in these areas in the future, and that the proposed study will detract from his wilderness experience and the enjoyment he derives from hunting" sufficient to establish standing).

SCI and SCI's members also support the management and conservation of this species through sustainable use.[15]  The hunting of this species enjoyed by members of SCI is one example of such sustainable use (as noted above, Georgia has conducted this hunt for at least 25 years).  This interest also is sufficient to warrant intervention in this case.

### 3.      Plaintiffs' Proposed Relief, if Granted, Would Impair These Legal Interests

If DOW succeeds in this litigation, the relief they request could eliminate the opportunity to hunt Florida Black Bear in southern Georgina and undermine the sustainable use conservation efforts of SCI.  DOW seeks an order directing the FWS "to

---

[15] Anderson Decl., ¶¶ 4-5.

issue a proposed rule listing the Florida black bear as an endangered or threatened species [under the ESA] according to a timetable to be determined by the Court." Pl. Complaint, Prayer for Relief ¶ 3. The ESA prohibits the "take" of any listed species. 16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. § 17.31(a). "Take" is broadly defined to include hunting or pursuing the species. 16 U.S.C. § 1532(19). Thus, if granted, the ultimate relief sought in this lawsuit – the listing of the Florida Black Bear – would impair an interest enjoyed and valued by SCI and SCI's members – the ability to hunt the Florida Black Bear and undertake and promote sustainable use conservation. SCI should have the opportunity to defend against this possible impairment of its interests and those of its members.

### 4.    The Parties to this Action Offer Inadequate Representation

The Federal Defendants do not have the same interests as SCI and do not adequately represent SCI's interests.[16] To refute an assertion that an applicant's interests are "adequately represented" by existing parties, the applicant need only show that the existing representation "may be" inadequate, and the showing required is "minimal," *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972), or as the D.C. Circuit has described it, "not onerous." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). As an initial matter, "[t]he burden is on those opposing intervention to show that representation for the absentee will be adequate." *United States v. AT&T*, 642 F.2d 1285, 1293 (D.C. Cir. 1980); *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969); *see also Caterino v. Barry*, 922 F.2d 37, 42 n.4 (1st Cir. 1990).[17]

---

[16] DOW, of course, does not represent the interests of SCI at all.

[17] While some authorities suggest that the burden is on the applicant, *see Fund for Animals v. Norton*, 322 F.3d 728, 736 n.7 (D.C. Cir. 2003) (discussing cases supporting

Even where the potential intervenor's interest in upholding an agency's decision may coincide with that of the defendant agency, that interest, by itself, does not necessarily mean that "adequacy of representation is ensured for purposes of rule 24(a)(2)." *NRDC v. Costle,* 561 F.2d 904, 912 (D.C. Cir. 1977). "[M]erely because parties share a general interest in the legality of a program or regulation does not mean their particular interests coincide so that representation by the agency alone is justified." *American Horse Protection Ass'n v. Veneman,* 200 F.R.D. 153, 158 (D.D.C. 2001). Similarly, the D.C. Circuit has found that the FWS could not adequately represent the "more narrow and parochial" interests of the country of Mongolia in litigation challenging the FWS' listing and importation obligations with respect to foreign species of argali sheep, even though both entities involved in the litigation were involved in efforts to conserve the sheep species and were attempting to defend the legality of the same ESA regulation. *Fund for Animals v. Norton,* 322 F.3d 728, 737 (D.C. Cir. 2003).

SCI's focus is much narrower and yet much deeper than that of the FWS. SCI's interests include preserving and enjoying the opportunity to hunt the Florida Black Bear and promoting sustainable use conservation of this species. The Federal Defendants' interest more broadly include upholding its no-listing decision and avoiding all the prohibitions and obligations that accompany listing – such as enforcement of the take prohibition, Section 7 inter-agency consultation, permitting, critical habitat designation, and recovery plan preparation. The Federal Defendants have no interest in partaking in recreational hunting of the Florida Black Bear. In fact, except in limited fashion as it pertains to Federal lands, the Federal Defendants have no interest at all in regulating

---

both approaches), in the end it often matters little because the burden of showing inadequate representation is so minimal. *See id.*

hunting, a task traditionally left to the States.

In addition to having a broad interest in avoiding the ESA regulatory obligations (where they are not needed), the Federal Defendants are obligated to represent the interests of different groups with competing motivations. For example, FWS also must represent those who oppose sustainable use hunting as a viable and valuable conservation method for any species, including the Florida Black Bear. SCI actively supports "sustainable use" and hunting as effective tools to manage wildlife. In such a situation, an agency cannot adequately represent the interests of all of these groups at the same time. *See Trbovich*, 404 U.S. at 538 (agency had to "serve two distinct interests, which are related, but not identical," causing "sufficient doubt about the adequacy of representation to warrant intervention").

The Court has recognized that the FWS cannot adequately represent each individual affected by a decision related to the ESA. One case involved the application for intervention submitted by a nightclub performer who had been given permit authority to use wildlife in his nightclub act, pursuant to the captive-bred wildlife registration program. *People for Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993). Animal rights group plaintiffs claimed that the FWS's issuance of a permit to the performer violated the ESA. The district court allowed the performer's intervention as of right, finding that the FWS's obligation to design and enforce an entire regulatory system for the general public interest could diverge from the performer's narrower interest in the regulated conduct in which he wished to engage. *Id.* at 8. The same conclusion applies to SCI's narrow interest in preserving the hunt.

Similarly, numerous other courts have recognized that a government defendant

may not adequately defend the interests of a party whose support of a governmental

action may be based upon a much narrower interest in that action.  For example, the

Tenth Circuit has suggested that an intervenor-applicant's minimal burden is satisfied in

any case where a governmental agency seeks to protect both the public interest in the

subject matter at issue, as well as the narrower private interest of the proposed

intervenors.  The Court found this task to be "impossible."  *National Farm Lines v. ICC*,

564 F.2d 381, 384 (10th Cir. 1977).

The Third Circuit allowed the intervention of logging companies, trade

associations and others in a case where plaintiffs brought a NEPA action against the

Forest Service to enjoin logging activities in a National Forest.  *Kleissler v. U.S.F.S.*, 157

F.3d 964 (3rd Cir. 1998).  The *Kleissler* court noted that the Forest Service "represents

numerous complex and conflicting interests."  *Id.* at 973.  Consequently the Third Circuit

allowed intervention to prevent a situation where "[t]he straightforward business interests

asserted by intervenors here may become lost in the thicket of sometimes inconsistent

governmental policies."  *Id.* at 974.  Similarly, SCI's interest in preserving hunting

opportunities may get lost in the thicket of the entire ESA listing scheme at issue here.

The Tenth Circuit Court shares the Third Circuit's view.  The Tenth Circuit

explained that "[i]n litigating on behalf of the general public, the government is obligated

to consider a broad spectrum of views, many of which may conflict with the particular

interest of the would-be intervenor."  *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246,

1255-56 (10th Cir. 2001).  The Tenth Circuit also noted that the intervenor-applicant

could demonstrate the inadequacy of government representation if the intervenor-

applicant has an expertise in the subject matter that exceeds that of the government.  *Id.* at

1255.  As least as to the hunting of the species, SCI has this expertise, as the FWS is not

even involved in the state-run Florida Black Bear hunt.

### 5.    Standing to Intervene

By demonstrating its entitlement to intervene under Fed. R. Civ. P. 24(a), SCI

satisfies any standing requirement.  After questioning the need for defendant-intervenors

to show standing at all, the D.C. Circuit has held that "any person who satisfies Rule

24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of*

*Iran,* 333 F.3d 228, 233 (D.C. Cir. 2003).  Thus, for the same reasons SCI is entitled to

intervene as of right under Rule 24(a), they satisfy any standing requirement to intervene

as a defendant in this action.

SCI also satisfies any organizational standing requirements.  Standing for

organizations exists when (1) the members would otherwise have standing to sue in their

own right; (2) the interests that the associations seek to protect are germane to the

organization's purpose; and (3) neither the claim asserted nor the relief requested requires

the participation in the lawsuit of the individual members.  *Hunt v. Washington State*

*Apple Advertising Comm'n*, 432 U.S. 333, 341 (1977).  SCI's members have standing as

they hunt and intend to hunt Florida Black Bear and listing the species would harm that

interest.  Protecting the right to hunt and to use hunting as a sustainable use conservation

method is germane to SCI and SCIF's purposes.[18]  As this case involves declaratory and

injunctive relief against the Federal government, the participation of individual SCI

members is not required.

---

[18] See Anderson Declaration, ¶¶ 4-5.

**B.    Alternatively, SCI Satisfies the Requirements for Permissive Intervention Under Rule 24(b)**

Should this Court deny SCI leave to intervene as of right, it should grant SCI

permissive intervention under Fed. R. Civ. P. 24(b), which states:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common . . .. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Permissive intervention involves a substantially lower burden than the test for

intervention as of right under Rule 24(A).[19]  Allowing permissive intervention is within

the Court's discretion. *E.E.O.C. v. National Children's Center, Inc.,* 146 F.3d 1042,

1046 (D.C. Cir. 1998).  The D.C. Circuit has adopted a "generous" or "flexible"

interpretation of the rule in order to address various circumstances. *Id.* at 1045-46.

Courts have allowed permission intervention when the intervenor applicant presents

claims or defenses in common with those presented in the main action and the

intervention would not prejudice the existing parties.  *See Arizona v. California,* 460 U.S.

605, 615 (1983) (tribes' "participation in litigation critical to their welfare should not be

discouraged" and States failed to show prejudice); *DSMC, Inc. v. Convera Corp.,* 273 F.

Supp. 2d. 14, 27 (D.D.C. 2002) (parties agree that permissive intervention will cause no

prejudice or delay); *California v. United States,* 805 F.2d 857, 866 (9th Cir. 1986)

(environmental groups granted permissive intervention because their "defense to

California's suit presented questions of law and fact in common with the main action").

SCI is entitled to permissive intervention because the defenses that they intend to

---

[19] Permissive intervention is not a substitute for intervention as of right.  If the party qualifies for intervention as of right under Rule 24(a), the Court must grant that status. Fed. R. Civ. P. 24(a).

raise, such as that the FWS properly considered only the regulatory mechanisms existing as of 1998, the time of its decision not to list the Florida Black Bear, share questions of fact and law in common with the claims DOW has made and the defenses the Federal Government will raise in this case. *See DSMC,* 273 F. Supp. 2d at 27 (sharing "common defense" supports commonality of law and facts to warrant permissive intervention). While SCI may pay particular attention to the adequacy of the 1998 hunting regulations, this issue was raised in DOW's complaint and was addressed in the FWS's Listing Decision. Pl. Compl. ¶ 28; 69 Fed. Reg. at 2102-03.

The courts have granted permissive intervention to sporting organizations with strong interests in the subject matter of the case. *See, e.g., National Rifle Ass'n of America, Inc. v. Kleppe,* 425 F. Supp. 1101, 1103 (D.D.C. 1976) (due to their interests in all species, sportsmen and conservation organizations allowed to permissively intervene in case regarding use of steel shot). This Court recently allowed SCI and other pro-hunting groups to permissively intervene in a lawsuit challenging the hunting of black bear on National Park Service lands. *Fund for Animals v. Mainella,* 294 F. Supp. 2d 46, 48 n.2 (D.D.C. 2003).

In representing the interests of the sporting community in this case, SCI will abide by all briefing and other schedules. As this case is still in the very earliest stages and since Federal Defendants have not yet even filed their response to Plaintiffs' Complaint, SCI's intervention will not cause undue delay or prejudice to any party. *See DSMC, Inc.,* 273 F. Supp. 2d at 27 (concurrence of briefing supports permissive intervention). The severity of the possible consequences of this litigation to the hunting and sustainable use conservation of the Florida Black Bear and to SCI's and SCI's members' interests in this

species justifies the participation of SCI in this action.   If the Court does not grant

intervention as of right, it should allow permissive intervention.

**IV.    CONCLUSION**

SCI fulfills all the requirements for intervention as of right and permissively.

This motion is timely and supports the substantial interests these organizations and their

members have in the Florida Black Bear.  The resolution of this case could adversely

affect the interests of SCI and its members.  The Federal Defendants do not share SCI's

narrow interests in hunting the Florida Black Bear and promoting sustainable use

conservation.  They will defend their decision, but must do so in a way that will balance

the competing interests of the diverse groups who claim an interest in the Florida Black

Bear.  Without SCI's participation, the interests of non-governmental persons and entities

who wish to hunt this animal and support necessary and valuable sustainable use

conservation will not be represented adequately.  SCI respectfully request that this Court

grant this Motion to Intervene.

Dated this 31st day of March, 2006.


Respectfully submitted,

Douglas S. Burdin
(D.C. Bar No. 434107)
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202)-543-8733
Facsimile: (202)-543-1205
dburdin@sci-dc.org

*Douglas S. Burdi* with consent for

Anna M. Seidman
(D.C. Bar No. 417091)
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202)-543-8733
Facsimile: (202)-543-1205
aseidman@sci-dc.org

Counsel for
Safari Club International and
Safari Club International Foundation