UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEFENDERS OF WILDLIFE, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 06-CV-00180 (HHK) |
| v. ) | |
| ) | |
| GALE NORTON, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |

**PLAINTIFFS' RESPONSE TO SAFARI CLUB INTERNATIONAL ET AL.'S MOTION TO INTERVENE**

Safari Club International's and Safari Club International Foundation's ("Safari's") Motion to Intervene fails to satisfy the requirements of intervention as of right under Federal Rule of Civil Procedure ("Rule") 24(a)(2). Specifically, Safari has neither moved to intervene in a timely fashion, nor is the U.S. Fish and Wildlife Service's ("FWS's") representation inadequate. Nonetheless, in the interests of judicial economy, Plaintiffs do not oppose Safari's permissive intervention under Rule 24(b)(2).

## BACKGROUND

This case is the culmination of over fourteen years of repeated litigation seeking to compel the FWS to make a final determination to list the Florida black bear under the Endangered Species Act, 16 U.S.C. § 1531, et seq. (2000) ("ESA"). The FWS's review of the bear for listing stretches back even farther.

In the 1980's, the FWS designated the Florida black bear as

a "Category 2" candidate species for which listing might be appropriate, but for which additional data was required. In October 1990, the FWS published a 90-day finding that "[s]ubstantial information has been presented to indicate that the petitioned action may be warranted." Notice of Finding, 55 Fed. Reg. 42,223, 42,223 (Oct. 18, 1990). Approximately two years after its 90-day finding, in 1992, the FWS followed with a one-year finding that "listing the Florida black bear as threatened is warranted," but nonetheless "precluded" by other actions. Finding on a Petition, 57 Fed. Reg. 596, 596 (Jan. 7, 1992) (emphasis added). To Plaintiffs' knowledge Safari did not participate in any of these proceedings.

Later that year, Plaintiffs The Fund for Animals and Defenders of Wildlife, along with others, settled a lawsuit against the FWS for unlawfully delaying the final listing of, among other species, the Florida black bear. See The Fund for Animals, Inc., et al. v. Babbitt, Civ. No. 92-0800 (SS) (D.D.C.). Safari was not a party to the litigation, nor did it express any interest in becoming a party to the litigation. In 1998, pursuant to the settlement agreement as subsequently modified, the FWS made a final determination with respect to the Florida black bear, yet it concluded that the bear did not warrant listing, despite its previous finding that the bear did warrant listing. New 12-Month Finding, 63 Fed. Reg. 67,613 (Dec. 8,

2

1998).

As a result, Plaintiffs brought suit against the FWS challenging its about-face and sudden determination that the Florida black bear no longer warranted listing under the ESA. Again, Safari was not a party to the litigation, nor did it express any interest in becoming a party to the litigation.

In 2001, this Court granted Plaintiffs' summary judgment motion in part, and granted Plaintiffs relief by remanding to the FWS and directing it to consider, inter alia, whether regulations currently in existence when the FWS makes its determination adequately protect the Florida black bear. Defenders of Wildlife v. Norton, No. 99-02072 (HHK) (D.D.C. Dec. 13, 2001) ("2001 Order"). While on remand, Plaintiff Defenders of Wildlife submitted comments and sought to engage the FWS in its review of the bear. To Plaintiffs' knowledge, Safari neither submitted any comments, nor did it express any interest in the FWS's determination and possible rulemaking.

In 2004, in response to this Court's 2001 Order, the FWS once again issued a determination with respect to the Florida black bear, and once again purported to conclude that the bear did not warrant listing. Reexamination of Regulatory Mechanisms, 69 Fed. Reg. 2100, 2101 (Jan. 14, 2004). In so doing, however, the FWS violated the Court's 2001 Order - and the mandate of the ESA to base its decision on the best available scientific and

commercial data, 16 U.S.C. §1533(b)(1)(A) - by, among other things, expressly limiting its consideration - in 2004 - to "regulatory mechanisms in effect at the time of [the FWS'] previous 1998 12-month finding." Id. at 2102.

As a result, Plaintiffs brought the present case to secure the relief to which they were entitled under the 2001 Order. It is only now, in an action seeking to enforce the Court's 2001 Order - fourteen years after Plaintiffs first turned to the courts, and five years after Plaintiffs were granted relief in the 2001 Order - that Safari seeks to intervene, asserting that its intervention is not only timely, but necessary to protect its rights. Safari's silence over the intervening years of litigation and regulatory proceedings belies both contentions.

## **ARGUMENT**

Rule 24(a)(2) provides for intervention as of right when four criteria are met: (1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties. Smoke v. Norton, 252 F.3d 468, 470 (D.C. Cir. 2001). Safari's motion to intervene as of right should be denied not only because it is untimely, but also because the government adequately represents Safari's interests.

As described above, this case continues almost fourteen years of repeated litigation seeking to compel the FWS to make a final determination to list the Florida black bear as endangered

in accordance with the Endangered Species Act.  Safari was never a party - nor did it ever seek to become a party - in any of these court proceedings.  Safari's request to intervene in an action to enforce judicial relief previously secured, particularly after it sat silent for fourteen years, is patently untimely.  E.g., <u>United States v. State of Oregon</u>, 913 F.2d 576, 588 (9th Cir. 1990) (motion to intervene after twenty years untimely).

Perhaps more importantly, however, Safari's interests are adequately represented by the FWS in this case.  At every turn, the FWS has taken every conceivable step to <u>avoid</u> protecting the Florida black bear under the ESA – first, when the agency at least recognized that the species <u>needed</u> to be listed, by claiming that listing was precluded by other activities, 57 Fed. Reg. 596; then, when forced to shed that excuse, by claiming that listing was no longer necessary, 63 Fed. Reg. 67,613; and finally, when ordered by this Court to properly consider the adequacy of regulatory mechanisms to protect the bear, by limiting that analysis to outdated regulations, rather than considering the current status, including the protections the bear is or is not receiving, at the time the determination is made.  69 Fed. Reg. at 2100.  Indeed, given that Safari seeks to intervene to defend the FWS's decision to once again refuse to protect the Florida black bear under the ESA, it is difficult to

fathom what <u>else</u> the FWS could be doing to more adequately represent their interests.[1]

In addition, Safari has not suggested any arguments or positions it intends to present in this case that will be at all different from those presented by the FWS. Plaintiffs certainly would not dispute Safari's argument that the FWS has an interest in "avoiding all the prohibitions and obligations that accompany listing." Safari Motion at 14. But the fact remains that both the FWS and Safari want the same result here – to uphold the FWS's decision to not protect the bear under the ESA - and, particularly in light of the FWS's myriad decisions to deny the bear protections at all cost to this point, it is evident that this is the rare case where, in fact, the agency <u>does</u> adequately represent the proposed-interveners' interests.

---

[1] As the very cases Safari relies upon demonstrate, the adequacy of representation depends in large part on whether the interests of the intervener and the existing parties might diverge. <u>E.g.</u>, <u>Fund For Animals v. Norton</u>, 322 F.3d 728, 736 (D.C. Cir. 2003) (analyzing whether "the interests of the [intervener] and those of the FWS might diverge during the course of litigation"). Courts also consider whether the intervener has a special body of knowledge or expertise. <u>See</u> <u>National Farm Lines v. Interstate Commerce Commission</u>, 564 F.2d 381, 382 (10th Cir. 1977) (discussing cases). Notably, the cases cited by Safari involved efforts by interveners to protect a particularized interest, such as a financial interest, that did or could readily diverge from the government's interest. <u>E.g.</u>, <u>People for the Ethical Treatment of Animals v. Babbitt</u>, 151 F.R.D. at 8 ("divergence of interests between the Government and [intervener]" existed where intervener sought to protect his "livelihood"). Here, however, there is no divergence of interests, positions, or arguments, nor any expertise that the FWS lacks, that could justify intervention under Rule 24(a)(2).

Indeed, while Plaintiffs certainly disagree, Safari itself claims that the interests it is seeking to promote are its interests in the "conservation of wildlife" and the "wildlife and the habitat on which they depend." Mot. of Safari Club International And Safari Club International Foundation To Intervene And Mem. of Law In Supp. at 3, 4, 14 ("Safari Motion"). Taking this assertion at face value, once again, this is the <u>same</u> interest that the FWS purports to be advancing, <u>i.e.</u>, "to conserve, protect and enhance fish, wildlife, and plants and their habitats for the continuing benefit of the American people." <u>See</u> U.S. Fish and Wildlife Serv., Mission, http://www.fws.gov/mission.html (last visited Apr. 12, 2006).

With respect to the Florida black bear, Safari's and the FWS's interests join even more tightly. The FWS's public notice makes clear that a) the FWS does not believe that the bear warrants listing; and b) the FWS approves of hunting the bear. <u>See</u> 69 Fed. Reg. at 2103 ("Ga. DNR's approach to managing the bear hunt provides effective regulatory means to prevent hunting from becoming a threat . . . ."). These are Safari's stated interest in this case, and the FWS has spent the last fourteen years in repeated litigation defending it and the FWS' refusal to list the bear.

Therefore, not only are Safari's and the FWS's interests entirely consistent in this case, they are virtually

7

indistinguishable, and Safari has offered nothing to suggest that Safari's interests might diverge from the FWS's interests, or that Safari might raise different arguments than the FWS, take a different position than the FWS, or have some specialized expertise that the FWS lacks.

In sum, Safari's continuing silence over the last fourteen years of repeated litigation is a testament to the adequacy of the FWS's representation of Safari's interests.  The Court should deny Safari's motion to intervene as of right under Rule 24(a)(2).

### **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Safari's application for intervention as of right.  Plaintiffs do not oppose, however, Safari's application for permissive intervention.

Respectfully submitted,

_____/S/_____
Joshua R. Stebbins
(D.C. Bar. No. 468542)

_____/S/_____
Howard M. Crystal
(D.C. Bar No. 446189)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C.  20009
(202) 588-5206

Of Counsel:

        /S/
Brian Segee
(D.C. Bar. No. 492098)


Michael P. Senatore
(D.C. Bar No. 453116)
Defenders of Wildlife
1101 Fourteenth Street, N.W.
Suite 1400
Washington, D.C.  20005

Attorneys for Plaintiffs

April 14, 2006