**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEFENDERS OF WILDLIFE, et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>P. LYNN SCARLETT[1], et al. )<br>) Case No. 06-cv-00180 (HHK)<br>Defendants, )<br>)<br>SAFARI CLUB INTERNATIONAL, )<br>SAFARI CLUB INTERNATIONAL )<br>FOUNDATION )<br>)<br>Defendant-Intervenor )<br>Applicants. )<br>_____ ) | |

**REPLY OF SAFARI CLUB INTERNATIONAL AND
SAFARI CLUB INTERNATIONAL FOUNDATION TO
OPPOSITION TO MOTION TO INTERVENE**

Safari Club International and Safari Club International Foundation (collectively "SCI") demonstrated in their Motion to Intervene[2] that their intervention is warranted because they have an interest in hunting Florida Black bear in southern Georgia and because that interest will be impaired if Plaintiffs are successful in this litigation. SCI also demonstrated that the Federal Defendants, who are concerned with all aspects of their decision not to list and who are answerable to a broad constituency of those interested in Florida Black Bear conservation, may not adequately represent SCI's more

---

[1] Now the Acting Secretary of the Interior, substituted automatically pursuant to Fed. R. Civ. P. 25(d)(1).

[2] Filed March 31, 2006, Docket No. 7.

focused interests. Finally, SCI's motion in the present litigation was timely and SCI's participation will not prejudice any party.

In response, DOW does not actually oppose SCI's intervention in this case. DOW does not contest that SCI and SCI members have significant interests in the Florida Black Bear, which is the subject matter of this lawsuit, nor does DOW dispute that this lawsuit may impair those interests. DOW even asserts that it would be in the "interests of judicial economy" for SCI to be an intervenor-defendant in this case, albeit under the permissive intervention rule. DOW also concedes that only in the "rare case" does the government adequately represent a defendant-intervenor's interests. Finally, DOW does not argue the timeliness of SCI's motion in relation to filing of the Complaint and the state of proceedings in the present lawsuit or that SCI's participation in this case would in any way prejudice the existing parties. DOW's only arguments for why SCI should be permissive intervenors instead of intervenors as of right are (1) that SCI did not participate in prior, separate lawsuits concerning the Florida Black Bear and (2) that because the government and SCI want the same result – defeat of DOW's claims – the government adequately represents SCI's interests.

**A.     This Motion is Timely**

By filing in advance of any substantive events in this case, SCI has moved to intervene in a timely fashion. DOW does not appear to dispute that SCI's motion is timely as to the present lawsuit, case number 06-cv-00180 (HHK), filed on February 2, 2006. Instead, DOW asserts that although this case involves a new complaint, a new docket, and new allegations of violations of the Endangered Species Act ("ESA") and Administrative Procedure Act ("APA"), it is one and the same as cases filed and resolved

2

with prejudice years ago and SCI's motion is not timely in relation to these earlier cases. Oppos. at 4-5. DOW asserts no authority for the proposition that a challenge to an agency's action on remand from a case in which a Court has chosen not to retain continuing jurisdiction, constitutes a mere continuation of the original case. Nor does DOW provide any precedent to support its theory that intervention in the later case is rendered untimely by the existence of the earlier concluded litigation.

In support of its argument that the present lawsuit is the same case as earlier litigation involving the Florida Black Bear, DOW claims that the present lawsuit is "an action to enforce judicial relief previously secured." Oppos. at 5. But DOW's complaint does not frame the claims of the litigation quite so narrowly. Instead, the Complaint claims that the Federal Defendants "have violated section 4 of the ESA, ... and have therefore also acted ... in violation of the APA." Pls. Compl. ¶ 60 ("Plaintiffs' Claim for Relief" section). DOW *also* asserts that the FWS's January 2004 decision violates the remand order and is therefore a violation of the APA. *Id.* ¶ 61. Thus, the present case addresses several issues: did the Federal Defendants violate the ESA, the APA, *and* this Court's remand order when they re-determined that the regulatory mechanisms in 1998 sufficiently protected the Florida Black Bear. The case now before the Court is not the same case as has been litigated before, nor is it merely a continuation of previous litigation. Moreover, SCI's interest in participating in and ability to contribute to the present lawsuit is not changed because it did not intervene in the earlier cases.

Most importantly, no existing party, including DOW, will suffer any prejudice from SCI's involvement in litigating the FWS's 2004 decision on regulatory mechanisms. The timeliness requirement does not set strict timelines. *NRDC v. Costle*, 561 F.2d 904,

3

907 (D.C. Cir. 1977).[3] Instead, the main purpose of the timeliness requirement is to prevent prejudice to existing parties. *United Nuclear Corp. v. Crandford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties, ....."); *Butterworth v. Jones Chemicals, Inc.*, 148 F.R.D. 282, 286 (M.D. Fla. 1993) ("Various courts have recognized that the timeliness requirement of Rule 24(b) was designed to prevent prejudice to the adjudication of the rights of the original parties, ...."). DOW makes absolutely no assertion that it will suffer any prejudice from SCI's intervention at this time.[4] In fact, DOW's statement that SCI's permissive intervention would be in the "interests of judicial economy," Oppos. at 1, confirms that DOW will suffer no prejudice, regardless of whether timeliness is measured in terms of the previous litigation. As prejudice to the existing parties is the key factor in determining whether a motion to intervene is timely, SCI has satisfied the timeliness requirement. *See NRDC*, 561 F.2d at 907-08.

While no existing party would suffer prejudice from SCI's participation, excluding SCI from this litigation would harm it. Unless it is allowed to intervene, SCI

---

[3] Even in *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990), the case cited by DOW for the proposition that intervention after 14 years was "patently untimely," Oppos. at 5, the court allowed several parties to intervene after 15, 17 and 21 years. *Oregon*, 913 F.2d at 588. It denied another entity's intervention, not because a particular amount of time had passed, but because that entity sought to expand the issues in the case and to disrupt a delicately balanced compromise the existing parties had worked out over several years. *Id.* at 588-89. Neither situation is present here.

[4] For example, there is no settlement on the table or other long-negotiated resolution of the case that the involvement of a third-party intervenor might disrupt, as in some cases denying intervention on timeliness grounds. *See, e.g., County of Orange v. Air California*, 799 F.2d 535, 537, 538 (9th Cir. 1986) (intervention denied where applicant sought intervention on eve of approval of settlement the existing parties had reached after five years of litigation).

would be deprived of a voice in this litigation and a means of protecting its interests. Prejudice to the intervention-applicant is another factor in the timeliness analysis. *United States v. AT&T Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980) (factors to weigh in determining timeliness include "the need for intervention as a means of preserving the applicant's rights"). DOW does not appear to dispute that SCI and SCI members have a strong interest in this case and that the disposition of the case could impair that interest. Thus, this factor also supports finding that SCI timely filed its motion.

### B. The Parties to this Action Offer Inadequate Representation

As demonstrated in SCI's Motion to Intervene, the Federal Defendants do not have the same interests as SCI in this litigation and cannot adequately represent SCI's interests. DOW correctly asserts that it is the "rare case" where the government adequately represents the interest of a proposed intervenor-defendant. Pls. Oppos. at 6. Thus, DOW seems to agree that the necessary showing of inadequate representation is "minimal," *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972), or "not onerous." *Dimond v. District of Columbia,* 792 F.2d 179, 192 (D.C. Cir. 1986).

It is hardly surprising that SCI and FWS "want the same result here," Oppos. at 6, but that is no reason to deny intervention. *See, e.g., Fund for Animals v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003) ("even 'a shared general agreement ... does not necessarily ensure agreement in all particular respects,' ... and '[t]he tactical similarity of the present legal contentions of the [parties] does not assure adequacy of representation or necessarily preclude the [intervenor] from the opportunity to appear in [its] own behalf,' ....") (citations omitted). On one issue of the many involved in defending this case, SCI's focus is much narrower and yet much deeper than that of the FWS. The FWS

5

does not necessarily accept or promote hunting as a conservation tool, especially in regard to the Florida Black Bear; SCI both accepts and promotes hunting as a recreational activity and conservation tool.[5]

DOW's assertion that the FWS "approves of hunting the bear," Oppos. at 7, is at least an overstatement. In fact, the FWS does not allow the hunting of Florida Black Bear on lands under its jurisdiction in Georgia, specifically in the Okefenokee National Wildlife Refuge, while the State of Georgia allows it in five counties surrounding the Refuge. 69 Fed. Reg. 2100, 2103 (January 14, 2004). Far from advocating for the hunting of Florida Black Bear, the FWS merely documented the fact that Georgia's regulatory approach to managing "the bear hunt provides effective regulatory means to prevent hunting from becoming a threat to the Okefenokee population in the future." *Id.* Nothing indicates that the FWS will defend the use of hunting as a conservation tool or that the Service will as vigorously defend the appropriateness of hunting the Florida Black Bear as a viable and successful means of bear management and conservation as will SCI. *See NRDC,* 561 F.2d at 912 (intervenor "likely to serve as a vigorous and helpful supplement to [agency's] defense.").

In addition to overstating the congruence of the FWS's and SCI's interests, DOW made no attempt to distinguish or argue against many of the cases SCI cited in which the courts have recognized that a Federal agency could not adequately represent the focused interests of members of the public. See Mot. to Intervene at 14-17, citing *NRDC,* 561 F.2d at 912; *American Horse Protection Ass'n v. Veneman,* 200 F.R.D. 153, 158 (D.D.C. 2001); *Kleissler v. U.S.F.S.,* 157 F.3d 964, 973-74 (3rd Cir. 1998); *Utah Ass'n of Counties*

---

[5] DOW is incorrect to assert that SCI's interest is *only* in the conservation of the species and its habitat. Oppos. at 7.

*v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001). And while the reasons for allowing intervention in each case may vary, the Plaintiffs have themselves on numerous occasions obtained defendant-intervenor status in cases challenging Federal action, a status that necessarily included a finding that the government did not adequately represent the Plaintiffs' interests in those cases, despite a common desire to defend the government's action. *See, e.g., Wyoming v. U.S. Dept. of the Interior*, 360 F. Supp. 2d 1214, 1225 (D. Wyo. 2005) (Sierra Club granted defendant-intervenor status in case challenging FWS decision not to accept State wolf management plan as part of movement toward delisting a wolf species); *Pennaco Energy Inc. v. U.S. Dept. of the Interior*, 377 F.3d 1147, 1150 (10th Cir. 2004) (Defenders of Wildlife and other groups permitted to intervene to defend agency decision); *Cayman Turtle Farm, Ltd. v. Andrus*, 478 F. Supp. 125, 128 (D.D.C. 1979) (Defenders of Wildlife and the Fund for Animals permitted to intervene to defend agency regulations prohibiting trade in certain animal parts).

In addition, SCI cited numerous other cases in which the government inadequately represented an intervenor's interests because of its duty to represent and govern the interests of the varied and sometimes contradictory positions of the public. Motion to Intervene at 14-17. DOW's attempt to distinguish these cases is unpersuasive. Pls. Oppos. at 6 n.1. The interest in the performer's "livelihood" discussed in *People for Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6, 8 (D.D.C. 1993) is indistinguishable, for purposes of intervention, from the interests of SCI members in hunting the Florida Black Bear and in sustainable use conservation at issue in the present case. Like in the PETA lawsuit, the FWS in the present matter "has a mandate to design and enforce an entire regulatory system in the public interest ...." *Id.* at 8.

7

Similarly, in *Fund for Animals v. Norton*, 322 F.3d 728 (D.C. Cir. 2003), the country of Mongolia (which was the intervenor-defendant) and the FWS both were involved in efforts to conserve the sheep species at issue and both were attempting to defend the same ESA regulation. The D.C. Circuit nonetheless found that the FWS could not adequately represent the "more narrow and parochial" interests of the country of Mongolia. *Id.* at 737. In determining that neither the FWS nor sporting organizations (including SCI) adequately represented Mongolia's interests, the D.C. Circuit stated "[f]or just these reasons, we have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Id.* at 736.

In trying to distinguish *National Farm Lines v. ICC*, 564 F.2d 381, 383 (10th Cir. 1977), DOW focuses on only one of the many reasons the court granted defendant-intervenor status – the applicants' expertise in the subject matter. Oppos. at 6 n.1.[6] The court, on the other hand, primarily considered the "impossible" task of "protect[ing] not only the interest of the public but also the private interest of the petitioners in intervention ...." *National Farm Lines*, 564 F.2d at 383-84. SCI has a similar "private" interest in hunting the Florida Black Bear, an interest not shared by all members of the general public or the FWS.

Through the ESA, the FWS is a potential regulator of the Florida Black Bear. Members of SCI are the ones who would be affected most directly by any Federal regulation and management of the species if the FWS were to list the species. Members of SCI enjoy a recreational use of the species that the FWS simply is incapable of

---

[6] SCI possesses an expertise relevant to defending the governmental action, on-the-ground experience hunting the species and knowledge of hunting as a sustainable use conservation tool.

undertaking. Thus, the FWS cannot possibly represent an interest it does not share, much less *adequately* represent that interest. Finally, DOW represents those members of the public that want to force the FWS to list the Florida Black Bear. Without SCI's intervention, the interests of those members of the public that want the FWS *not to list* the species will be left without a voice.

### C.   Conclusion

SCI fulfills all the requirements for intervention as of right and the court should grant that status. This motion is timely and SCI's intervention would not prejudice any existing party. On the other hand, the resolution of this case could adversely affect the substantial interests of SCI and its members. The Federal Defendants do not share SCI's narrow interests in hunting the Florida Black Bear and promoting sustainable use conservation. They will defend their decision, but must do so in a way that will balance the competing interests of the diverse groups who claim an interest in the Florida Black Bear. Without SCI's participation, the interests of non-governmental persons and entities who wish to hunt this animal and who support necessary and valuable sustainable use conservation will not be represented adequately. SCI respectfully requests that the Court grant this Motion to Intervene.

Dated this 24th day of April, 2006.

                              Respectfully submitted,

*/s/ Douglas S. Burdin*

Douglas S. Burdin
(D.C. Bar No. 434107)
Anna M. Seidman
(D.C. Bar No. 417091)
501 2nd Street N.E.
Washington, D. C. 20002
Telephone: (202)-543-8733
Facsimile: (202)-543-1205
**dburdin@sci-dc.org**

Counsel for
Safari Club International and
Safari Club International Foundation

*/s/ Anna M. Seidman*

Anna M. Seidman
(D.C. Bar No. 417091)
501 2nd Street N.E.
Washington, D. C. 20002
Telephone: (202)-543-8733
Facsimile: (202)-543-1205
**aseidman@sci-dc.org**

Counsel for
Safari Club International and
Safari Club International Foundation