Westlaw

57 FR 596-01
57 FR 596-01, 1992 WL 1571 (F.R.)
(Cite as: 57 FR 596)

Page 1

PROPOSED RULES

DEPARTMENT OF THE INTERIOR

Fish and Wildlife Service

50 CFR Part 17

Endangered and Threatened Wildlife and Plants; Finding on a Petition To List the Florida Black Bear as a Threatened Species

Tuesday, January 7, 1992

AGENCY: Fish and Wildlife Service, Interior.

ACTION: Notice of petition finding.

SUMMARY: The Service announces a 12-month finding on a petition to amend the List of Endangered and Threatened Wildlife. After review of all available scientific and commercial information, the Service has determined that listing the Florida black bear as threatened is warranted but precluded by other higher priority actions to amend the Lists of Endangered and Threatened Wildlife and Plants.

DATES: The finding reported in this notice was made in December, 1991. Comments and information may be submitted until further notice.

ADDRESSES: Information, comments, or questions regarding the petition finding may be submitted to the Field Supervisor, U.S. Fish and Wildlife Service, 3100 University Boulevard South, suite 120, Jacksonville, Florida 32216. The petition, finding, supporting data, and comments are available for public inspection, by appointment, during normal business hours at the above address.

FOR FURTHER INFORMATION CONTACT: Mr. David J. Wesley at the above address (904/791-2580; FTS 946-2580).

SUPPLEMENTARY INFORMATION:

Background

Section 4(b)(3)(B) of the Endangered Species Act of 1973, as amended in 1982 (16 U.S.C. 1531 et seq.), requires that, for any petition to revise the Lists of Endangered and Threatened Wildlife and Plants that contains substantial scientific and commercial information, the U.S. Fish and Wildlife Service (Service) should make a finding within 12 months of the date of the receipt of the petition on whether the petitioned action is (a) not warranted, (b) warranted, or (c) warranted, but precluded from immediate proposal by other pending proposals. Section 4(b)(3)(C) requires that petitions for which the requested action is found to be "warranted but precluded" should be treated as though resubmitted on the date of such finding,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff's Exhibit 4

```
57 FR 596-01                                                          Page 2
57 FR 596-01, 1992 WL 1571 (F.R.)
```
**(Cite as: 57 FR 596)**

i.e., requiring a subsequent finding to be made within 12 months. Such 12-month findings are to be published promptly in the Federal Register.

 In a petition dated May 20, 1990, and received by the Service on June 11, 1990, the Service was requested by Ms. Inge Hutchison of Lake Geneva, Florida to list the Florida black bear as a threatened species. The petition cited the following threats to the Florida black bear: (1) Illegal hunting by beekeepers, gallbladder poachers, and others; (2) loss and fragmentation of critical habitat; (3) hunting pressure; and (4) road mortality. An administrative finding that the petition presented substantial information that the requested action may be warranted was made in September, 1990, and announced in the Federal Register on October 18, 1990 (55 FR 42223).

 The Florida black bear (Ursus americanus floridanus) is a subspecies of the black bear (Ursus americanus), which ranges from northern Alaska and Canada south to northern Mexico. The black bear formerly occurred in all the lower 48 States, but its range has decreased and become fragmented, particularly in the eastern States, where it is now generally restricted to large areas of remote woodlands (Maehr 1984a). The Florida black bear was described by Merriam (1896) based on a male specimen from Key Biscayne, Dade County, Florida. Merriam stated that he had examined several other skulls that he assigned to this species, apparently all from the Everglades area of south Florida. According to Hall (1981), the Florida black bear is primarily restricted to Florida but also occurs in the coastal plain areas of Georgia and Alabama. Hall indicates that the range of floridanus extends into extreme southeastern Mississippi, but cites no specimens attributable to the subspecies from that State. According to Hall's range map of the subspecies of the black bear, floridanus presumably intergrades with two other adjacent and contiguous subspecies of the black bear: on the north, with the American or eastern black bear (U. a. americanus) in Georgia and Alabama, and on the west with the Louisiana black bear (U. a. luteolus). The latter subspecies, historically occurring in southern Mississippi, Louisiana, and east Texas, was proposed as a threatened species by the Service on June 21, 1990 (55 FR 25341), due to threat from habitat loss and fragmentation of the populations.

 Historically, the Florida black bear was found throughout Florida, including some coastal islands. Following extensive human development in the State, the distribution has become reduced and fragmented (Brady and Maehr 1985). It is currently considered a threatened species (in Florida) by the Florida Game and Fresh Water Fish Commission, except in Baker and Columbia Counties and Apalachicola National Forest, and is considered threatened by the Florida Committee on Rare and Endangered Plants and Animals (Williams 1978; Maehr and Wooding undated). The Florida black bear was considered a candidate for listing under the Endangered Species Act of 1973, as amended, in Service review notices of December 30, 1982 (47 FR 58454), September 18, 1985 (50 FR 37958), January 6, 1989 (54 FR 554), and November 21, 1991 (56 FR 58804).

 In response to the October 18, 1990, notice the Service received comments from the Florida Congressional delegation, the state game agencies of Alabama, Florida, and Georgia, two conservation groups, two animal rights organizations, the Wildlife Committee of the National Forest Products Association and American Forest Council, and numerous private parties. Comments are summarized below.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 FR 596-01                                                          Page 3
57 FR 596-01, 1992 WL 1571 (F.R.)
**(Cite as: 57 FR 596)**

In a joint letter dated July 19, 1991, the Florida Congressional delegation supported the listing of the Florida black bear as a threatened species.

The Alabama Division of Game and Fish (Division) stated that the black bear was considered a game species in Alabama, but that there was currently no open season. The Division enclosed a report (Dusi 1987) based on a study of black bears in southwestern Alabama. The report concluded that a dense, healthy and relatively undisturbed population of black bears occurred in Baldwin, Mobile and Washington Counties. Dusi (1987) believed that one habitat feature that made this area valuable black bear habitat was the presence of extensive titi (Cliftonia monophylla and Cyrilla racemiflora) swamps, providing refuge from human disturbance. He pointed out that such heavy shrub habitat was absent in much of Alabama. Maehr (1984) and Dusi (1986) have previously considered the survival of this population to be of concern. The Service's Daphne, Alabama Field Office reported that the size of this southwestern Alabama population might be as few as 50 bears.

The Georgia Game and Fish Division (Georgia) currently allows bear hunting in the five counties that are contiguous with the Okefenokee Swamp; this is within the range of the subspecies floridanus. The hunt totals 6 days, taking place the last weekend of September and the first two weekends in October. In their comments, Georgia included a nine-year summary (1981-1989) of bears that had been checked during the hunts; 221 bears, including 107 males and 114 females, were taken *597 during this period. Total annual take ranged from five to 56 bears. In the 1990 hunt, 23 bears (8 males, 15 females) were taken; 33 bears (15 males, 18 females) were taken in 1991 (Wes Abler, Georgia Division of Game and Fish, pers. comm.). This brought the eleven-year total to 277 bears (120 males and 147 females). There has been no indication of a downward trend in population. A seven-year age summary (1983-1989) showed the average age of males taken to be 4.44 years, and females 6.57 years. This was interpreted by Georgia to indicate a healthy age structure and a sustainable harvest. Georgia also indicated that they averaged three to six road-killed bears per year and received one or two nuisance bear complaints each year. They estimated that there was likely an annual illegal harvest by beekeepers approximating the legal harvest. Georgia believes that the Okefenokee black bear population is very healthy and would not merit listing as a threatened species. Service response: The Service must consider the status of a species over its range when making listing decisions. The existence of healthy populations in some parts of the range does not preclude the possibility that the species may qualify for listing based on one or more of the listing factors described under section 4 of the Act.

The Florida Game and Fresh Water Fish Commission (Commission) submitted information on the conservation status of the black bear in Florida. Black bears are still widely distributed in Florida, but the current distribution is patchy and fragmented, in contrast to the continuous range in the state before human settlement. The largest remaining black bear populations in Florida are located on Big Cypress National Preserve; Ocala, Osceola, and Apalachicola National Forests; and areas adjacent to these federal lands. A number of other small populations persist, but their long-term survival is doubtful because of small population size, limited habitat, and the likelihood of further development. Urbanization, agricultural development, and increasing recreational pressure are all considered to contribute to habitat loss. The size of the current bear population in Florida is not known, but is estimated at 500-1000 animlas (Maehr and Wooding undated). In a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 FR 596-01                                                                  Page 4
57 FR 596-01, 1992 WL 1571 (F.R.)
**(Cite as: 57 FR 596)**

black bear habitat study of Ocala and Osceola National Forests, Wooding and Hardisky (undated) estimated that 125 bears may occur in Ocala National Forest; their sample size was too small to estimate the Osceola population. The black bear in Florida is currently considered threatened by the Florida Committee on Rare and Endangered Plants and Animals (Williams 1978) and by the Commission, except in Apalachicola National Forest and Baker and Columbia Counties, where regulated hunts are allowed.

The Commission goal for black bear management is to maintain the health and status of the species statewide. According to the Commission, bears in the two hunted populations have been hunted on a sustained yield basis for many years. The total number of bears checked from the Florida hunts over the nine years from 1981 to 1989 was 415 (mean = 46.1 per year). There was no apparent indication of a decline in the hunted populations, although regulatory changes have been made, and continue to be made, to reduce hunting pressure on females as necessary. Bear harvest is monitored by hunter reporting and mail surveys. Decisions on each year's hunt are generally based on numbers and sex and age distribution of the bears taken in the previous year. The Commission presented information on numerous changes in regulations affecting bears in Florida that had been made from 1939 to 1991. The trend has been toward more limitd hunting, with fewer areas open to hunting for shorter periods. In recent years, the hunt has been opened later in the year, when females are more apt to be denning and are therefore less vulnerable to being taken. The most recent harvest analysis (Wooding 1990) indicated that, while the hunt on private lands was sustainable, harvests on Osceola National Forest had been exessive and the record number of bears killed in Apalachicola National Forest in 1989-1990 was of concern. These findings resulted in the most recent changes in the bear hunt regulations. The Osceola National Forest hunt was reduced to nine days in mid-January, with no bear hunting allowed in archery, muzzleloader, and general gun seasons. The Apalachicola National Forest bear hunt was restricted to eleven days in late November. The general gun season on private lands in Baker and Columbia Counties was delayed two weeks, commencing in late November.

The Commission also submitted reports on black bear necropsies performed by Commission staff in 1989 and 1990. These data indicated that from April 1989 to June 1990, 48 black bears were known to have died from collisions with vehicles and three were killed illegally. In some years, road mortality equalled or exceeded legal take. Commission biologists have prepared recommendations on bear crossing designs and locations for major highways that, if implemented, would reduce bear mortality from vehicle collisions.

Comments from the conservation groups, animal rights organizations, and private parties supported Federal listing for the Florida black bear, citing habitat loss due to human population growth, roadkills, unsupportable hunting, and small but unknown population size as threats to the Florida black bear. Service response: The Service will continue to evaluate these threats with regard to the priority of listing the Florida black bear under the Act.

The Wildlife Committee (Committee) of the National Forest Products Association and the American Forest Council opposed listing. They believed the petition to list the Florida black bear was a surrogate (sic) to constrain land use policy, particularly timber harvesting; and that this would be a misuse of the Act's stated purpose to conserve endangered and threatened species and their ecosystems. Service response:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 FR 596-01                                                          Page 5
57 FR 596-01, 1992 WL 1571 (F.R.)
**(Cite as: 57 FR 596)**

Since the petitioner's main concern seemed to be hunting, and not land management practices, the Service does not believe the petition was primarily intended to constrain land use. Regardless of the intent of petitioners, the Service lists species only if they meet one or more of the five listing criteria in section 4(a)(1) of the Act. If a species qualifies for listing, the Service must proceed with such regulation, other priorities permitting. Economic impacts are not considered in making a listing decision, although they must be considered in promulgating regulations involving critical habitat. The Service attempts to carry out its listing, consultation, and recovery responsibilities so as to conserve the ecosystems on which endangered and threatened species depend. When possible, the Service lists species found together in particular ecosystems at the same time, and includes them in the same recovery plan, to emphasize the importance of protecting ecosystems, not just individual species.

  The Committee also suggested that the subspecific nomenclature of the Florida black bear is archaic and should not be relied upon. They enclosed a letter from Dr. Michael Kennedy of Memphis State University, who recently examined skull morphology of the Louisiana black bear (Ursus americanus luteolus) as part of a recent investigation (Pelton 1989) of that subspecies' taxonomic validity. Dr. Kennedy felt that the taxonomic status of the Florida black bear was questionable for the following reasons: (a) The original description of the *598 subspecies did not assess geographic variation over the range of the two subspecies, because only material from south Florida was used to describe the Florida black bear. A complete assessment of bears using modern systematic tools has not been conducted. (b) Based on the Pelton report (1989), the Florida and Louisiana black bears are very similar. A complete assessment of Ursus americanus is neeed. Service response: The Service agrees that it would be desirable to have better taxonomic understanding of bear populations in the southeastern United States, and intends to commence a taxonomic study to address this issue in the near future. This study is expected to include both genetic and morphometric analyses of southeastern black bears and could clarify the status of the three subspecies in the region. The Service recently contracted with Dr. Kennedy to do additional morphometric work on this problem, and the results, although preliminary in nature and based on small samples, suggest that the subspecies americanus, floridanus, and luteolus are valid (Kennedy 1991). The Service notes that the Louisiana and Florida black bears remain generally accepted subspecies in the literature, and are eligible for protection under the Act. Although differences between the subspecies, as currently described, are slight, this is the case for many mammalian subspecies. Without further examination, doubts about the validity of black bear subspecies remain speculative.

  The Committee further suggested that the Service should participate in the establishment of a black bear conservation committee in Florida to develop management plans to ensure continued viable populations. Service response: The Service agrees that the cooperation of a number of landowners and managers could be beneficial for bear conservation, and is willing to participate in any such effort. However, if the black bear qualifies for listing according to the listing factors under section 4 of the Act, the formation of a conservation committee would not relieve the Service of its responsibility to list the subspecies. If the Florida black bear were listed, management plans and other conservation tools could be an important part of a recovery plan.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 FR 596-01                                                              Page 6
57 FR 596-01, 1992 WL 1571 (F.R.)
**(Cite as: 57 FR 596)**

Summary of Factors Affecting the Species

The five factors prescribed by section 4(a)(1) of the Act were evaluated to make a determination in response to the petition. These factors and their application to the Florida black bear (Ursus americanus floridanus) are as follows:

*A. The Present or Threatened Destruction, Modification, or Curtailment of its Habitat or Range*

Much of the historical habitat of the Florida black bear has been lost to land clearing and alteration by man. Brady and Meahr (1985) concluded that black bear distribution in Florida is reduced and fragmented, and that local extinctions are an important threat to the existence of the species in the state. The range of the Florida black bear in peninsular Florida is particularly vulnerable to further habitat loss. Florida is one of the fastest growing states in human population, and that trend is expected to continue. The largest remaining populations of the Florida black bear are on Federal lands (approximate acreage follow each site), including Okefenokee National Wildlife Refuge (438,000 acres), the adjacent Dixon Memorial State Forest Wildlife Management Area (38,500 acres), Eglin Air Force Base (310,000 acres), Apalachicola (718,000 acres), Ocala (410,000 acres), and Osceola (194,000 acres) National Forests; and Big Cypress National Preserve, Fakahatchee Strand State Preserve, and Florida Panther National Wildlife Refuge (644,000 acres combined). Bears enjoy a reasonable degree of habitat security on these lands, but there is a continuing need to insure that public land management remains compatible with the continued existence of bears, and that activities on adjacent private lands do not adversely affect bears on public lands. Residential, agricultural, commercial, highway, and other forms of human development have already eliminated viable populations of Florida black bears on many private lands throughout the range; in the future this subspecies is likely to be restricted to "islands" of suitable habitat on public lands, preventing movements between bear populations. Habitat loss has been, and continues to be the most serious threat to the continued existence of the Florida black bear.

Nonetheless, a considerable amount of public land (over 2.5 million acres), occurring in large, widely separated blocks, is likely to remain available for conservation of the Florida black bear. In recent years, there have been significant purchases of private lands for conservation purposes in Florida by Federal and state agencies, and private organizations. Several major land acquisitions will improve conservation prospects for the Florida black bear. Major acquisitions have taken place in Florida's Big Bend (upper Gulf Coast area), Pinhook Swamp (an area between Osceola National Forest and Okefenokee National Wildlife Refuge), adjacent to Ocala National Forest, and in the Big Cypress area (Florida Panther National Wildlife Refuge). Several of these acquisitions will assist in maintaining corridors and habitat between major black bear concentrations. Because bears dispersing from the larger and more secure blocks of protected habitat are more vulnerable to human-caused mortality, such habitat linkages are essential to insure long-term viability of the Florida black bear.

*B. Overutilization for Commercial, Recreational, Scientific, or Educational Purposes*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 FR 596-01                                                                 Page 7
57 FR 596-01, 1992 WL 1571 (F.R.)
**(Cite as: 57 FR 596)**

Although the Florida black bear is a game species in Alabama, that state does not allow a hunt and has no intention of doing so in the foreseeable future (Keith Guyse, Alabama Division of Fish and Game, pers. comm.). The Georgia Game and Fish Division currently allows a six-day hunt of Florida black bears (three weekends in September and October) in the five counties contiguous with Okefenokee National Wildlife Refuge. The Florida Game and Fresh Water Fish Commission allows a nine-day hunt in both Apalachicola and Osceola National Forests, and a 58-day (general gun season) hunt on private lands in Baker and Columbia Counties. Both Florida and Georgia use hunt harvest results (age and sex ratio data from bears checked in) to adjust the seasons and limits for the subsequent year, and both states have been able to maintain huntable bear populations for many years using this approach. Many other states use a similar approach to manager black bears. The Service believes that both Florida and Georgia have adequate knowledge of their bear populations to alter or halt hunting before any hunted population could be extirpated. However, it is possible that some populations could, at least periodically, be reduced to less than optimal densities for long-term conservation. It would therefore be desirable to have more information on the demographics of the hunted populations, particularly concerning birth and death rates and population density. Florida currently has studies underway on both a hunted (Apalachicola National Forest) and an unhunted (Big Cypress National Preserve) population, and Georgia continues to study the hunted Okefenokee population. Information from these and other studies will be *599 even more necessary to make harvest decisions as threats from habitat loss and road mortality increase. Without more information, it may be difficult to evaluate the combined effects of hunting and other sources of mortality, and it may be difficult to justify the hunt. The Service encourages Florida and Georgia to continue to gather more data to allow a better assessment of the effects of hunting on the Florida black bear.

*C. Disease or Predation*

Southeastern black bears are known to host a variety of disease organisms, but none seem to represent a serious problem (Davidson and Nettles 1988); disease is not known to be a factor in the decline of this subspecies. The Florida black bear has few natural enemies; predation is not a threat.

*D. The Inadequacy of Existing Regulatory Mechanisms*

The wildlife laws of the States of Alabama, Florida, and Georgia give them the authority to protect the Florida black bear through the regulation of hunting. Federal protection against illegal trade in bears or bear parts (e.g. gall bladders or claws) is available through the Lacey Act, if such trade crosses state lines. Federal listing of the Florida black bear would provide additional take prohibitions and penalties through sections 9 and 11 of the Act, and Section 7 of the Act would require Federal agencies to insure that their actions were not likely to jeopardize the continued existence of the Florida black bear or to adversely modify critical habitat designated for the species.

*E. Other Natural or Manmade Factors Affecting its Continued Existence*

Road mortality is a serious threat to the Florida black bear in Florida. The threat is likely to worsen with increases in human population, road-building, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 FR 596-01                                                                Page 8
57 FR 596-01, 1992 WL 1571 (F.R.)
**(Cite as: 57 FR 596)**

vehicular traffic. From 1976 to 1991, 250 bears were killed on Florida highways, with a steady increase over the years. Road mortality was greatest in the Big Cypress (Collier County) and the Ocala populations (Lake and Marion Counties), but occurred wherever bear populations must cross busy highways (John Wooding, Florida Game and Fresh Water Fish Commission, pears. comm., October 28, 1991). The Florida Game and Fresh Water Fish Commission is working with the Florida Department of Transportation to recommend and plan undercrossings in key areas as highways are built and widened, but it is likely that highways will continue to be a threat to the Florida black bear through habitat fragmentation.

Georgia reported 3-6 road-killed bears per year around Okefenokee Swamp, but roads and traffic are much more limited in that area than in much of Florida. No roadkill information was available from Alabama.

Humans are generally fearful and intolerant of bears when they come in contact. Nuisance complaints, particularly from beekeepers, are periodically received by state game agencies. As previously stated, illegal kills do occur as a result of these interactions. Maehr (1984b) reported that bear depredations have been reported from 41 of Florida's 67 counties, and that beekeepers have historically been responsible for a sizable illegal kill. The Georgia Game and Fish Division reported that beekeepers may kill as many bears annually around Okefenokee Swamp as are taken in the legal harvest.

Since bear parts, especially gall bladders, are considered to be medically valuable in the Orient, poaching of Florida black bears is a potential threat. Poaching of black bears to supply this illicit trade has been documented throughout North America, including within otherwise secure habitat on National Forest and National Park lands. Little information on such take is currently available within the range of the Florida black bear, and neither Alabama, Florida nor Georgia is aware of a serious problem, but continued attention should be paid to this threat. Illegal hunting could be especially detrimental to smaller, isolated populations of the Florida black bear.

Finding

On the basis of the best available scientific and commercial information and the following assessment of Service listing priorities and progress, the Service finds that the petition to list the Florida black bear as a threatened species is warranted, but precluded by work on other species having higher priority for listing.

In accordance with section 4(b) of the Act, the Service may make a warranted-but-precluded finding only if it can demonstrate that (1) other listing decisions have a higher priority, and that (2) expeditious progress is being made on other listing actions. On September 21, 1983, the Service published in the Federal Register its priority system for listing species under the Act. The system considers three factors in assigning species numerical priorities on a scale of 1 to 12. The three factors are magnitude of threat, immediacy of threat, and taxonomic distinctiveness.

As discussed above, the Florida black bear faces threats from habitat destruction,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 FR 596-01                                                                Page 9
57 FR 596-01, 1992 WL 1571 (F.R.)
**(Cite as: 57 FR 596)**

roadkills, and legal and illegal hunting. The Service considers the overall magnitude of these threats throughout the range of the subspecies as moderate to low. The Florida black bear occurs primarily on Federal lands (Okefenokee National Wildlife Refuge, Apalachicola, Osceola, and Ocala National Forests, and Big Cypress National Preserve) likely to remain favorable habitat into the foreseeable future. Although development is expected to continue on adjacent private lands, with negative effects on black bear habitat, the Service does not expect development to occur so quickly or extensively as to pose substantial immediate threats to the bear. Other man-caused threats, including road mortality, hunting and poaching, are a concern. They appear to be currently supportable by the major remaining Florida black bear populations, and are therefore considered to represent a moderate degree of threat.

The Service currently considers threats to the Florida black bear to be moderate-to-low throughout its range. As a subspecies, the Florida black bear has a lower listing priority than full species or monotypic genera under comparable threats to their continued existence. Therefore, the subspecies has been assigned a level 9 priority for listing. Other candidate species currently warrant more immediate listing consideration than the Florida black bear. Approximately 150 category 1 species (species for which the Service has adequate information to proceed with listing) are considered to have a high magnitude of imminent threat, and should therefore be addressed prior to the bear. If threats to the Florida black bear increase, the listing priority will become higher.

The Service believes that expeditious progress is being made on other listing actions. In fiscal year 1990 (October 1, 1989 to September 30, 1990), the Service proposed 106 species for listing and added 47 species to the lists of endangered and threatened wildlife and plants. In fiscal year 1991 (October 1, 1990 to September 30, 1991), 87 species were proposed for listing and 52 species were added to the list. Thus far in fiscal year 1992 (October 1, 1991 to September 30, 1992), the Service has proposed 67 species for listing and 37 species have been added to the list. The Service has also attempted to list species through multi-species listing actions whenever possible. In fiscal year 1990, 19 multispecies listings, including 92 species, were proposed or made final. In *600 fiscal year 1991, 16 multispecies listings, including 81 species, were proposed or made final. Thus far in fiscal year 1992, 10 multispecies listings, including 87 species, were proposed or made final. The Service intends to continue using multispecies listings whenever appropriate to maximize the use of its limited listing resources.

The Service will treat this petition, for which it makes a warranted-but-precluded finding, as though resubmitted on the date of the finding and make a subsequent finding within 12 months. The Service will continue to provide technical assistance to state and Federal agencies to address Florida black bear conservation needs.

References Cited

Brady, J.R. and D.S. Maehr. 1985. Distribution of black bears in Florida. Florida Field Naturalist 13:1-7.

Davidson, W.R. and V.F. Nettles. 1988. Field manual of wildlife diseases in the southeastern United States. Univ. of Georgia, Athens. 309 pp.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 FR 596-01                                                              Page 10
57 FR 596-01, 1992 WL 1571 (F.R.)
**(Cite as: 57 FR 596)**

Dusi, J.L. 1986. Black bear. Pp. 116-117 in R.H. Mount, ed., vertebrate animals of Alabama in need of special attention. Alabama Agric. Expt. Station, Auburn.

_____. 1987. Ecology of the black bear in southwest Alabama. Final report on project no. W-44 to Alabama Department of Wildlife and Conservation. 46 pp., 6 pl.

Hall, E.R. 1981. Mammals of North America. John Wiley and Sons, New York. 1175 pp.

Kennedy, M.L. 1991. Additional assessment of the systematics of Ursus americanus luteolus. Unpublished report to U.S. Fish and Wildlife Service, Jackson, MS Field Office. 14 pp. 8 fig.

Maehr, D.S. 1984a. Distribution of black bears in eastern North America. Pp. 74 in D.S. Maehr and J.R. Brady, ed., proceedings seventh eastern workshop on black bear research and management. Florida Game and Fresh Water Fish Commission, Tallahassee. 85 pp.

_____. 1984b. Black bear depredation on bee yards in Florida. Pp. 133-135 in D.J. Decker, ed., Proc. first eastern wildlife damage control conf. Ithaca, New York.

_____, and J.B. Wooding. Undated. Revised Florida black bear species account for Florida Committee on Rare and Endangered Species of Plants and Animals. 12 pp.

Merriam, C.H. 1896. Preliminary synopsis of the American bears. Proc. Biol. Soc. Wash. 10:65-83.

Pelton, M. 1989. The Louisiana black bear: status and future. Report to U.S. Fish and Wildlife Service. 22 pp.

Williams, L.E. Jr. 1978. Florida black bear. Pp. 23-25 in J.N. Layne, editor, Rare and Endangered Biota of Florida. Vol. 1: Mammals. 52 pp.

Wooding, J.B. 1990. Black bear harvest analysis. Final report on study no. 7554 to Florida Game and Fresh Water Fish Commission, Tallahassee. 8 pp.

_____, and T.S. Hardisky. Undated. Black bear habitat study. Final report on study 7552 to Florida Game and Fresh Water Fish Commission, Tallahassee. 37 pp., 8 tables, 2 append.

Author

 The primary author of this notice is Dr. Michael M. Bentzien (see ADDRESSES section above).

Authority

 The authority for this action is the Endangered Species Act of 1973, as amended (16 U.S.C. 1531 et seq.).

List of Subjects in 50 CFR Part 17

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

57 FR 596-01                                                          Page 11
57 FR 596-01, 1992 WL 1571 (F.R.)
**(Cite as: 57 FR 596)**

Endangered and threatened species, Exports, Imports, Reporting and recordkeeping requirements, and transportation.

Dated: December 31, 1991.

Richard N. Smith,

Acting Director, Fish and Wildlife Service.

(FR Doc. 92-243 Filed 1-6-92; 8:45 am)

BILLING CODE 4310-55-M

57 FR 596-01, 1992 WL 1571 (F.R.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.