

June 5, 2002

**By Certified Mail/Return Receipt Requested**

Steven Williams,
Director
U.S. Fish and Wildlife Service
1849 C Street, N.W.
Washington, D.C. 20240

Re:    **Florida Black Bear**

Dear Director Williams:

On December 13, 2001, U.S. District Court Judge Henry Kennedy entered final judgment for Defenders and the other plaintiffs in a case challenging the U.S. Fish and Wildlife Service's ("Service" or "FWS") 1998 decision not to list the Florida black bear as an endangered or threatened species under the Endangered Species Act ("ESA"). Specifically, the court found that the Service's 1998 finding that existing regulatory mechanisms are adequate to protect the black bear was arbitrary and capricious and in violation of section 4 the ESA and, accordingly, remanded the matter to the Service for further agency proceedings. The purpose of this letter is to provide you with additional information that warrants your consideration in making a new listing determination for the black bear. We have endeavored to provide you with as much detail as possible but in the interest of ensuring that your new determination is fully informed and most importantly, based upon the best scientific data available, as the ESA plainly requires, we urge you to issue a formal notice requesting additional information from the public on the Florida black bear's status and threats to its continued existence. We are confident that after you have thoroughly considered all such available information you will conclude that, in fact, the Florida black bear is not adequately protected by existing regulatory mechanisms and for this and other reasons, warrants listing as an endangered or threatened species under the ESA.

The fundamental basis for the Service's 1998 determination that the Florida black did not warrant listing under the ESA was its finding that four of the subspecies' nine remaining populations are relatively secure and adequately protected. These four populations exist on lands in and around Big Cypress National Preserve, Ocala National Forest, Okefenokee National Wildlife Refuge/Osceola National Forest, and Apalachicola National Forest. These federal lands and surrounding private and state lands are absolutely critical to ensuring the subspecies continued existence given that the Florida black bear has already been eliminated from nearly seventy-five percent of

National Headquarters
1101 Fourteenth Street, NW
Suite 1400
Washington, DC 20005
Telephone 202-682-9400
Fax 202-682-1331
www.defenders.org
www.kidsplanet.org

Printed on Recycled Paper

Plaintiff's Exhibit 6A

its range and given the Service's decision to write-off the other five remaining bear populations.

The Service's finding that the four main black bear populations are secure was based principally on two findings. First, the Service found that "there are currently adequate levels of protection and management authority" for the bear on the four major public land areas. 63 Fed. Reg. 67616-67617. Second, the Service found that the bear is also secure on non-federal lands in these four major areas based upon future land management activities and "projected" land acquisitions. Id. at 67615, 67616. As already noted, Judge Kennedy agreed with Defenders that the ESA does not authorize the Service to consider such future actions in making listing determinations. Instead, the Service can only consider "existing regulatory mechanisms." 16 U.S.C. § 1533(a)(1)(D) (emphasis added). The reason why Congress precluded the consideration of future actions is demonstrated clearly by information presented below reflecting that many of the proposed or future actions relied upon by the Service in 1998 are, in fact, still not being implemented and are unlikely to be implemented in the foreseeable future, if ever. This information reinforces that the Florida black bear is not adequately protected by existing regulatory mechanisms and for this and other reasons, warrants listing under the ESA.

1.    **The Florida black bear is not adequately protected on the Ocala, Osceola and Apalachicola National Forests, and Big Cypress National Preserve.**

One of the principal threats to the Florida black bear is the degradation and fragmentation of its habitat resulting from roads and off-road vehicle ("ORV") use and trails. There is substantial information available establishing that this threat is not being adequately addressed and instead is actually increasing, even on federal lands in Florida.

Scientific research has shown that black bear and other large mammals including grizzly bear, wolves, elk and cougar are detrimentally impacted by road densities that exceed one mile per square mile. See Out of Control: Roads and Off-Road Vehicles in Florida's National Forests, Draft Report, Defenders of Wildlife, June 2002 ("Out of Control") (Attachment "A"). The impacts of high road densities include severe habitat fragmentation, increased road kills and extensive negative edge effects. Moreover, high road and trail densities also increase human access into sensitive areas which in turn leads to increased adverse impacts such as poaching, trampling of vegetation and noise. A recent study found that the 1 mile per square mile standard is exceeded on the vast majority of lands in the Ocala, Osceola and Apalachicola National Forests in Florida. See Out of Control at 19-24. For example, Hoctor found that more than 97 percent of the Ocala National Forest has road densities that exceed 1 mile per square mile. Id. at 21. Approximately 87 percent of the Osceola National Forest exceeds an acceptable level. Id. at 19. And the Apalachicola National Forest is only marginally better where more than 60 percent of its area has a road density that exceeds 1 miler per square mile. Id. Moreover, even these alarmingly high figures fail to fully reflect the negative impacts of roads and trails on these national forests because many minor roads and ORV trails are not reflected in Hoctor's data.

The problem of ORV use on national forests in Florida is one that is not being adequately

P2

addressed. In fact, the U.S. Forest Service has actually encouraged and facilitated increased and illegal ORV access on national forests in Florida, including by doing very little if anything to stop the use of ORV's in Restricted Areas. See Comment Letters of Defenders of Wildlife on Access Designation Process for the Apalachicola, Ocala and Osceola National Forests (Attachments "B", "C", and "D"). Restricted Areas are defined in the U.S. Forests 1999 Revised Land and Management Resource Management Plan ("1999 RLRMP") as areas where "licensed motorized vehicles/bicycles are restricted to open numbered roads and designated trails." Defenders examined the aerial maps of the Ocala National Forest from 1943 to 2000 and found a proliferation of roads and unmarked trails during the 1980s and 1990s resulting from ORV use. Many of these routes were created by the illegal use of motorized vehicles in Restricted Areas. There is, in fact, little dispute that the U.S. Forest Service's existing regulatory program has failed miserably in adequately addressing the threat from improper ORV use in these national forests. Indeed, the Forest Service in its 1999 RLRMP concluded that

> The current permissive access policy has resulted in a maze of criss-crossing roads and travelways. Effects include user conflicts, erosion, compaction, and rutting of soils, sedimentation fo streams and lakes, damage or destruction of heritage resource sites and disturbance of sensitive wildlife species including ground-nesting birds, Florida black bears and nesting vultures and wading birds.

1999 Record of Decision for the RLMP, at 20. There is little sign that this situation will improve but instead, the U.S. Forest Service has proposed to make matters significantly worse by proposing through its Access Designation Process to actually legalize ORV trails that were created illegally in sensitive areas previously identified as unsuitable for motorized access. For example, the Access Designation working group has proposed 500 miles of ORV trails for the Apalachicola National Forest. Many of these new trails were created illegally by unlicensed ORV use in restricted areas. This action will not only permanently sanction the adverse impacts that have already occurred from past illegal ORV abuses, but will also send the message that illegal ORV use in our national forests is acceptable behavior and as a result, encourage more abuses and additional habitat degradation and fragmentation and adverse impacts to imperiled species like the Florida black bear.

Similarly, the National Park Service has failed miserably in regulating improper and ecological destructive ORV use on Big Cypress National Preserve. Since Big Cypress National Preserve was created in 1974, the Park Service has allowed dispersed access into the preserve for up to 2,271 ORVs during the annual hunting season. See Final Recreational Off-Road Vehicle Management Plan and Supplemental Environmental Impact Statement: Big Cypress National Preserve, Florida (Park Service 2000) ("ORV Plan") at 109. As a result, ORVs have created thousands of miles of trails in Big Cypress and Addition Lands, causing significant ecological and environmental damage. Id. at 86, 88-90. Even now, after nearly 30 years of failing to address this significant threat to Big Cypress and its native wildlife and habitats, the Park Service still has yet to implement a plan to address the ORV issue.

2.    **The Florida black bear is not adequately protected from the cumulative impacts of continued habitat loss and fragmentation resulting from residential, commercial and related development, or sprawl.**

A recent study by the U.S. Forest Service forecasts that between 1992 and 2020 the south will lose 12 million acres of forest to urban development, and that an additional 19 million forest acres will be lost to development between 2020 and 2040. See The Southern Forest Resource Assessment: Summary Report, David Wear and John Greis, U.S. Forest Service, November 19, 2001 at 86 ( "Forest Assessment") (Attachment "E"). The study found that "urbanization will have the most direct, immediate, and permanent effects on the extent, condition, and health of forests" in the south. Id. The loss of forest land to urbanization and the concomitant ecological impacts will be especially great in Florida, one of just four "subregions of concern" identified in the report where forest losses will be the greatest. Id. at 90. The study's authors noted, for example, that "[i]n the [Florida] Panhandle, we anticipate a rapid increase in population and development spreading from central Florida" and that "local actions could have far-reaching implications for species persistence." Id. at 90. The past, ongoing and projected loss of forest land in Florida to strip malls, housing developments, roads and golf courses is in no small part the result of woefully inadequate state and local laws protecting Florida's native habitats and species.

There are no state or local laws on the books in Florida that specifically protect or regulate the destruction of Florida black bear habitat. As a result, the bear's habitat, particular on upland areas, is routinely destroyed to make way for roads, homes, golf courses, strip malls and other developments. Much of this development is being built on habitat within the four major black bear areas that the Service had previously determined were secure and adequately protected. Following is just a short list of some of the development projects that will adversely impact the Florida black bear.

- SR 20 widening (Putnam County)
- Q.I. Roberts Middle School and road construction (Putnam County)
- Fort Gates Ferry housing development (Putnam County)
- Acosta Creek subdivision (Putnam County)
- Brown's Landing Road bypass expansion (Putnam County)
- Etoniah/Cross Florida Greenway subdivisions (Putnam County)
- Putnam County transportation and development corridors project
- Hog Island condominium development project (Putnam County)
- I-4 widening (Volusia County)
- Suncoast Highway I and II (Hernando and Citrus Counties)
- SR 40 widening through Ocala National Forest
- Cobb Road and U.S. 98 widening (Hernando County)
- Nocatee development project (St. Johns and Duval Counties)
- St. Joe airport and marina (Bay County?)
- golf course and housing development project (Franklin County)

P4

- Astor Farms development project (Seminole County)
- Gatwick II development project (Lake County)
- Seminole Towne Mall (Seminole County)

The ongoing and cumulative loss of Florida black bear habitat resulting from these and hundreds of other development projects throughout the subspecies range is substantial. The Nocatee development in St. Johns and Duval Counties alone covers 15,000 acres, much of which is black bear habitat. And the lack of existing state and local laws protecting black bear habitat is not likely to improve. In fact, Putnam County – which is a critical corridor for black bears traveling between Ocala National Forest and St. Johns areas – is revising its comprehensive plan to promote more commercial and residential development, much of which will come at the cost of losing more black bear habitat. In light of this and other information, the Service, cannot reasonably conclude that the Florida black bear is adequately protected from the ongoing and increasing threat of sprawl-related habitat loss and fragmentation.

3.      **The State of Florida is actually curtailing its non-regulatory Florida black bear conservation programs.**

In addition to the complete lack of regulatory protections specifically protecting black bear habitat in Florida, the state of Florida is also significantly cutting back on its non-regulatory bear conservation programs. Governor Jeb Bush, for example, has proposed eliminating all but 2 of the state's 11 employees currently working on black bear conservation. This will severely undermine important black research, education and conservation efforts.

Perhaps even more alarming, the legislature has been steadily chipping away at Florida's land acquisition program, a program that the Service heavily relied upon in refusing to list the Florida black bear. In 2000, the Florida state legislature appropriated $300 million under Preservation 2000 for various land conservation and recreational purposes. Fifty percent of this amount, or $150 million a year, was set aside for conservation and recreational land acquisition. When Preservation 2000's successor program, Florida Forever, was reauthorized in 2001, however, the legislature cut the percentage of money available for land acquisition from 50 to 35 percent. This translates into an annual cut of $45 million in the state's land acquisition program, or a loss of $450 million over the 10 year life of the program. In addition, last year the legislature took $75 million from Preservation 2000 that was available to acquire black bear habitat and redirected for other purposes. The legislature has even chipped away at the money that was previously available to the state's water management districts for land acquisition land acquisition by authorizing the use of these funds for non-acquisition purposes.

We urge you to give meaningful consideration to the information contained within this letter and to publish a formal public notice requesting additional information on the current status of the Florida black and threats to its continued existence. We are confident that once you have evaluated all available scientific information that you will conclude that the Florida black/bear warrants listing under the ESA.

Sincerely,

Michael Senatore

attachments

P6