UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SOUTHWEST CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation; <u>et al</u>. | ) ) ) | |
| | ) | Case No. CIV 1:95CV02138 SS |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | FEDERAL DEFENDANTS' STATUS CONFERENCE STATEMENT |
| BRUCE BABBITT, Secretary of the Interior, <u>et al</u>. | ) ) | |
| | ) | |
| Defendants. | ) ) | |

## I.  INTRODUCTION

In anticipation of the June 3, 1997, status conference in this case, the defendants Bruce Babbitt, <u>et al.</u>, file this Statement to apprise the Court and plaintiffs of a significant new development that substantially affects the United States Fish and Wildlife Service's ("FWS") reconsideration of plaintiffs' petition to list the Queen Charlotte goshawk as a threatened or endangered species under Endangered Species Act ("ESA").  On May 23, 1997, the United States Forest Service adopted a revised forest plan for the Tongass National Forest.  As described below, the Forest Service revised the Tongass Land Management Plan

1

Plaintiff's Exhibit B

("TLMP"), the primary existing regulatory mechanism affecting the goshawk, to the species' benefit.  While the FWS could proceed imminently with a finding based on the obsolete 1979 plan, the agency believes, however, that it should base its goshawk finding on the 1997 plan given the importance of this new information and this Court's mandate to consider the relevant regulatory mechanisms (now, the revised TLMP).  The FWS needs only 90 days to incorporate the revised TLMP into its decision analysis to render a meaningful finding.

## II.    BACKGROUND

The Queen Charlotte goshawk resides within the Tongass National Forest in Southeast Alaska and other parts of coastal British Columbia.  In 1994, plaintiffs petitioned the FWS to list the goshawk as a threatened or endangered species under Section 4 of the ESA.  Plaintiffs based their petition on the alleged inadequacy of the Forest Service's 1979 TLMP to protect the goshawk from further habitat loss due to timber harvests.  In 1995, the FWS determined that plaintiffs' petitioned action was not warranted.  Using the listing criteria in ESA Section 4(a)(1), the FWS found that the goshawk was neither threatened nor endangered with extinction.

Plaintiffs sued.  Plaintiffs argued that the FWS improperly

based its decision on expected future actions of the Forest Service. Under ESA Section 4, plaintiffs contended that the FWS must consider only the adequacy of "<u>existing</u> regulatory mechanisms." 16 U.S.C. 1533(a)(1)(D) (emphasis added). According to plaintiffs, reliance upon anything but the plan existing at the time of the decision would not only violate Section 4(a)(1)(D) but also the requirement of Section 4(b)(1)(A) to make listing determinations solely on the "best scientific and commercial information available." 16 U.S.C. 1533(b)(1)(A).

On cross-motions for summary judgment, this Court decided in plaintiffs' favor. In its September 25, 1996, Memorandum Opinion, the Court briefly sketched the status of the goshawk and the Forest Service's management of the Tongass National Forest under the National Forest Management Act. Memorandum Opinion at 2-3. This Court's opinion explicitly places central importance on the Forest Service's land management plan for the Tongass for the future of the goshawk. <u>Id.</u> Timber harvesting on the Tongass guided by TLMP affects the goshawk's habitat. In sum, the Forest Service's TLMP is the primary regulatory mechanism affecting the goshawk.

Due to the critical importance of TLMP, the Court agreed with plaintiffs that under Sections 4(a)(1)(D) and 4(b)(1)(A) of

3

the ESA, the FWS could not rely upon "possible future actions of the Forest Service to provide sanctuary for the goshawk." Memorandum Opinion at 6.   Instead, the Court determined that the plain language of Section 4(a)(1)(D) required the FWS to consider only the plan in existence at the time of its decision.   Id.   The Court therefore remanded the "not warranted" finding to the FWS and directed that the FWS base its decision on the "current" plan.   Id.

Following this remand, plaintiffs moved to amend the judgment.   Plaintiffs asked the Court to order the FWS to make a new decision on the petition within a specified time frame (plaintiffs requested 30 days).   The FWS opposed, asserting that a new decision would be made within 8 months.   On December 3, 1996, the Court denied plaintiffs' motion based upon the FWS' representation that it could issue a new decision by May 31, 1997.   See December 3, 1997, Order at 1.   The Court also set a status conference on this matter for June 3, 1997.

### III.   STATUS OF THE REMAND AND NEW TLMP

Since the remand, the FWS has diligently moved forward to reconsider plaintiffs' petition based upon the 1979 TLMP.   In December 1996, the FWS solicited from the public any new information on the status of the goshawk.   After receiving this

4

information and conducting further analysis, the Alaska regional
office of the FWS prepared its recommendation and forwarded it to
FWS in Washington.  FWS headquarters review is currently
proceeding and a new decision on the petition could be made
within the time schedule represented to the Court.  See
Declaration of Jamie Rappaport Clark, Exhibit A, at ¶¶ 6-7.[1]  The
Forest Service's recent adoption, however, of the revised TLMP
calls into question the utility of proceeding with an analysis
based on the now outdated plan.

On May 23, 1997, the Forest Service adopted a revised forest
plan for the Tongass.[2]  As set out in the Record of Decision
("ROD")( Exhibit B), the Forest Service believes that the 1997
TLMP represents a substantial change in land management practices
with significant benefits to wildlife, including the goshawk.  As
set forth in the ROD, Forest Plan (Exhibit C), and Appendix N to
the Final Environmental Impact Statement (Exhibit D), the Forest
Service, developed an old-growth strategy to preserve wildlife

---

[1]  The exhibits referred to in this statement are identical to
the exhibits attached to the statement filed in Biodiversity
Legal Foundation v. Babbitt, No. 1:96CV00227 (the Alexander
Archipelago wolf case).  Because of the length of these
documents, the defendants will not attach the same exhibits to
this statement but instead incorporate them by reference.

[2]  The revised TLMP will become effective 30 days from the notice
of availability published in the Federal Register.  See 16 U.S.C.
1604(j);Exhibit B (ROD) at 40.

habitat with the aid of outside recommendations and internal study and review. First, the Forest Service created a old-growth habitat conservation reserve system across the Tongass consisting of large, medium, and small reserves and other land use designations that exclude timber harvest. This conservation system protects over 3,550,000 acres of productive old-growth forest. Second, the plan sets forth management measures for lands subject to timber harvest (known as the "matrix") that protects additional old-growth and further reduces effects on wildlife. For example, the plan creates riparian buffers and 1000 foot beach buffers to connect the reserves. The plan also contains specific standards and guidelines designed to protect goshawk nest areas and habitat on Prince of Wales Island that falls below a certain thresholds of percentage old-growth forest. The management measures protect 69 percent of the productive old-growth in the matrix. See Exhibit B (ROD) at 7, 32-33; Exhibit D (FEIS Appendix N) at N-16 to N-24. The Forest Service believes this plan will provide sufficient habitat to sustain viable populations of the goshawk well-distributed across the Tongass. Exhibit B (ROD) at 34; Exhibit D (FEIS Appendix N) at N-38 to N-44.

The FWS anticipates that the revised plan not only

6

represents a substantial body of new information but also that it is likely to improve the existing regulatory mechanisms affecting the goshawk.  However, the FWS has not yet ben able to comprehensively review the new plan and integrate it into the agency's analytical framework developed to assess the status of the goshawk under the old plan.  The FWS will need 90 days to render a competent petition finding premised on the new, current, TLMP.  Declaration of Clark, at ¶ 12.

The following factors demonstrate the appropriateness of permitting the FWS additional time to base its petition finding on the current TLMP:

1.    Consideration of the obsolete 1979 TLMP in the face of a new plan would be contrary to law.  As plaintiffs and this Court have repeatedly stressed, ESA Section 4(a)(1)(D) requires that FWS consider adequacy of <u>existing</u> regulatory mechanisms. Since this requirement precludes consideration of possible future revisions, it also prevents consideration of outdated plans.  The ESA requires that the FWS examine the relevant regulatory system, and, now, this means the new, 1997 TLMP.

Moreover, to ignore the new plan and the information contained therein may also violate the ESA's requirement to base the petition finding on the best scientific and commercial

7

information available.  16 U.S.C. 1533(b)(1)(A).  The FWS

believes that the new TLMP to be highly relevant, material new

information that it must consider in order to meet its

obligations under the ESA Section 4(b)(1)(A).  Declaration of

Clark at ¶ 10.  The FWS cannot ignore relevant information when

making findings under ESA Section 4.  <u>Northern Spotted Owl v.</u>

<u>Hodel</u>, 716 F.Supp. 479, 481-83 (D. Wash. 1988)(petition finding

remanded to agency for failure to properly consider information);

<u>Conservation Law Foundation v. Watt</u>, 560 F.Supp. 561, 572 (D.

Alaska 1983), <u>aff'd</u>, 716 F.2d 946 (1st Cir. 1983)(under "best

scientific data available" standard agency cannot ignore nearly

complete studies).

    2.  A court should not utilize its equitable powers to

order the performance of a useless act.  <u>Jaffe-Spindler Co. V.</u>

<u>Genesco, Inc.</u>, 747 F.2d 253, 258 (4th Cir. 1984).  Here,

proceeding with a petition finding on the old, outdated plan

would be an academic exercise.  For example, plaintiffs demand

that the FWS render a petition finding based on information that,

with the adoption of the new TLMP, has become irrelevant.  As the

Court recognized in its October 10 Memorandum Opinion, one of the

key considerations necessary to accurately assess the status of

the goshawk is how the Forest Service intends to harvest timber

in goshawk habitat.  This Forest Service management direction is now contained in the new TLMP.  Thus, an assessment based upon the old plan would present an inaccurate analysis of the threats faced by this species.

Furthermore, the normal consequences that flow from a petition finding lead to additional absurdity if based upon an obsolete plan.  For example, if the FWS were to find the goshawk petition  "not warranted," and the plaintiffs subsequently sued (as they did over the first such finding), the parties would litigate a purely hypothetical scenario; namely whether a plan that is no longer in effect would have adequately protected the goshawk.  Likewise, if the FWS were to render a "warranted" finding, the agency would be required to  "promptly" issue a proposed rule to list the species and call for public comment on the issue of whether an obsolete plan does or does not protect the goshawk.[3]  In addition, the publication of a proposed rule would require the Forest Service to "conference" on some agency actions under ESA Section 7(a)(4).  Conferencing based upon a plan that no longer comports with what would be happening in the

_____

[3]  The FWS may also issue a "warranted but precluded" finding if work on other proposals to lists species is more biologically imperative and overall expeditious progress is being made to list and delist threatened or endangered species.  16 U.S.C. 1533(b)(3)(B)(iii)

goshawk's habitat appears to be of little value. Such results would waste the agencies' and the public's scarce resources on purely academic exercises.

3.    FWS needs 90 days to integrate the new TLMP into its analysis of the status of the goshawk.  As readily evident from the attached copies of the ROD, the TLMP, and FEIS Appendix N, the 1997 TLMP represents a complex system of land use designations and standard and guidelines that will guide the harvesting of timber for the next 10 to 15 years.  While the FWS has reviewed some of these elements in draft form, it has itself just received the final plan package.  The FWS must gather the information and direction from the plan relevant to the goshawk. The agency will then incorporate these elements into the overall qualitative and quantitative analysis necessary to predict how the species would fare under the new TLMP.    This process requires, at a minimum, 90 days.  Declaration of Clark, at 12.

4.    The additional time requested will not result in adverse effect to the goshawk.  As detailed in the earlier briefings in the case, the future status of the goshawk depends on how timber harvest occurs over an extended period of time.  As a consequence, it makes little difference to the goshawk whether FWS acts now on the obsolete plan or three months later on the

revised plan.  Declaration of Clark at ¶ 11.  No evidence
suggests that a short delay in the petition finding will
prejudice the goshawk.

### IV.  THE JUNE 3 STATUS CONFERENCE

At the June 3 status conference, the FWS intends to seek
direction from the Court regarding how the agency should proceed.
The FWS could either finalize its petition finding based on the
obsolete plan (which could occur relatively quickly) or delay for
a short period of time in order to incorporate the revised TLMP
(i.e. the relevant existing regulatory mechanism).  As set forth
above, the FWS believes that it is appropriate, if not required
by the ESA, to consider fully the 1997 TLMP when assessing the
status of the goshawk.  The FWS therefore requests 90 days to
undertake this task.

Dated: May 27, 1997.

                              Respectfully submitted,

                              LOIS J. SCHIFFER
                              Assistant Attorney General


                              JOHN L. MARSHALL
                              EILEEN SOBECK
                              Environment and Natural

Resources Division
U.S. Department of Justice
P.O. Box 7369
Benjamin Franklin Station
Washington, DC  20044-7369
(202) 305-0215

ATTORNEYS FOR DEFENDANTS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BIODIVERSITY LEGAL FOUNDATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civ. No. 1:95CV00227 |
| BRUCE BABBITT, Secretary, U.S. Department of the Interior, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

### DECLARATION OF JAMIE RAPPAPORT CLARK

I, Jamie Rappaport Clark, declare as follows:

1. I am the Assistant Director for Ecological Services of the U.S. Fish and Wildlife Service (Service), an agency of the U.S. Department of the Interior, located in Washington, D.C. In my capacity as Assistant Director, I am responsible to the Director for the administration of the Endangered Species Act (ESA), 16 U.S.C. § 1531-1544, including determinations about whether species should be listed as endangered or threatened.

2. Two cases were brought before this Court regarding petitions to list two species that occur in southeast Alaska. In Alaska, the Queen Charlotte goshawk occurs primarily in the Tongass National Forest; it also occurs on the coastal islands of British Columbia. The Alexander Archipelago wolf occurs almost exclusively in the Tongass National Forest in Alaska.

3. In Southwest Center for Biological Diversity, et al., v. Babbitt, et al., the Court ruled that the Service had improperly relied upon promises of future actions of the U.S. Forest Service in its decision that the petition to list the Queen Charlotte goshawk as threatened or endangered under the ESA was not warranted. The Court directed the Service to reconsider the 12-month petition finding and to make this finding "...on the basis of the current Forest Service plan, and the status of the goshawk as they stand today." The Service represented that it would issue this finding by May 31, 1997.

1

4. In <u>Biodiversity Legal Foundation, et al., v. Bruce Babbitt, et al.,</u> the Court also ruled that the Service had improperly relied upon future U.S. Forest Service actions in its decision that the petition to list the Alexander Archipelago wolf as threatened or endangered under the ESA was not warranted. In this case, the Court also directed the Service to reconsider the 12-month petition finding and to make this finding "...on the basis of the current Forest Service plan, and the status of the wolf as they stand today." The Service represented that it would issue this finding by May 31, 1997.

5. To fully address the requirement in section 4 that determinations on the status of a species be made on the basis of the "best scientific and commercial data available," the Service, on December 5, 1996, reopened the comment periods for both petitions to ensure that the public had the opportunity to supply any new biological information regarding the status of each of these species (61 FR 64497). It was extended until April 4, 1997, through three subsequent notices (61 FR 69065; 62 FR 6930; and 62 FR 14662).

6. During the Service's reevaluation, the Service examined both petitions and the literature cited in both petitions and reviewed other available literature and information. For the Alexander Archipelago wolf, the Service consulted with biologists and researchers familiar with gray wolves in general, and the Alexander Archipelago wolf in particular. For the Queen Charlotte goshawk, the Service consulted with biologists and researchers familiar with goshawks in general, and the Queen Charlotte goshawk in particular. In accordance with the Court's mandate that the Service base its decision on the "current Forest Plan," the 1979 Tongass National Forest Land Management Plan, as amended, was considered in evaluating the impacts from land management on both species on the Tongass National Forest.

7. The Service is ready to go forward with new findings for both species. As stated above, the findings would be based on the 1979 Tongass National Forest Land Management Plan.

8. On May 23, 1997, the U.S. Forest Service signed its Record of Decision on the Environmental Impact Statement for a revised Tongass National Forest Land Management Plan. Therefore, a new land management plan for the Tongass National Forest has replaced the 1979 Plan.

9. Both the wolf and the goshawk depend, to differing degrees, on old growth forest. Under the 1979 Plan, logging on the Tongass National Forest would have been concentrated in high volume old-growth forests. Preliminary information provided to the Service indicates that the revised plan reduces significantly the allowable old growth timber harvest, and it increases

2

the size and arrangement of reserves to benefit wildlife, including the Alexander Archipelago wolf and Queen Charlotte goshawk.

10. Section 4 of the ESA requires that determinations on a species status be based on the "best scientific and commercial data available." Further, the Court mandated the Service to base its determinations on the "current Forest Plan." The revised Tongass Land Management Plan that was adopted on May 23, 1997, represents new information which the Service expects could have a significant bearing on the status of these two species. With less than a week remaining before the date the Service committed to issue new findings for these petitions, there is insufficient time for the Service to review the Plan and evaluate precisely how it would be likely to affect the status of the Alexander Archipelago wolf and the Queen Charlotte goshawk.

11. In light of the availability of new information that likely has a considerable bearing on the Service's listing decisions, the Service respectfully requests an extension to enable the Service to evaluate the revised Plan and make new findings on the petitions to list these species under the ESA. It is the Service's belief that neither species currently faces an imminent threat of extinction and that a delay in making new decisions based on the revised Plan will not be to the disadvantage of either species. The decisions regarding whether either species meets the definitions of endangered or threatened under the ESA relates primarily to cumulative long term activities. Further, the Service believes that issuance of petition findings at this point based on a now-outdated land management plan would not be productive and would only cause confusion.

12. The Service anticipates that the process for reevaluating the status of the species would require at least 3 months. The Service would reopen the public comment period for 30 days to allow the public to comment on the impact the 1997 Plan may have on both the Alexander Archipelago wolf and the Queen Charlotte goshawk. The Service would then require at least 2 months to consider the comments, reassess the status of each species on the basis of the revised plan, prepare a recommendation from the Service's Regional Director in Alaska to the Service Director, and issue two new petition findings.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

Executed in Washington, D.C., this ____27th____ day of May, 1997.

JAMIE RAPPAPORT CLARK

3