UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEFENDERS OF WILDLIFE, ET AL.           )
                                        )
              Plaintiffs,               )
                                        )
       v.                               ) Case No. 1:06-cv00180 (HHK)
                                        )
DIRK KEMPTHORNE, ET AL.,                )
                                        )
              Defendants.               )
_____)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Courtney Taylor, Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box. 7369
Washington, D.C.  20044-7369
(202) 353-7548
Attorney for Defendants

OF COUNSEL

Michael P. Stevens, Attorney-Adviser
U.S. Department of the Interior
Office of the Regional Solicitor
75 Spring Street, S.W., Suite 304
Atlanta, Georgia   30303

<u>TABLE OF CONTENTS</u>

<u>PAGE</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    THE SERVICE'S 2004 REMANDED DETERMINATION FULLY COMPLIES
      WITH D.C. CIRCUIT PRECEDENT, THE COURT'S 2001 REMAND ORDER,
      AND THE ENDANGERED SPECIES ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   THE SERVICE CORRECTLY CONSIDERED AND DETERMINED THAT
      EXISTING REGULATORY MECHANISMS ARE NOT SO INADEQUATE AS
      TO WARRANT LISTING THE BLACK BEAR AS THREATENED OR
      ENDANGERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Plaintiffs' Statement of the Applicable Law is Incorrect . . . . . . . . . . . . . . . . . . . 8
      B.    The Service Properly Determined That Existing Regulatory Measures Are
            Not Inadequate To Prevent the Black Bear From Becoming Threatened or
            Endangered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.    The Service Was Not Required To Show That Regulatory Measures Counteract
            All Habitat Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE

Alpharma, Inc. v. Leavitt, 460 F.3d 1 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Biodiversity Legal Found. v. Babbitt, 943 F. Supp. 23 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . 7

County of Los Angeles v. Shalala, 192 F.3d 1005 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 3

Ctr. for Biological Diversity v. Badgley, 335 F.3d 1097 (9th Cir. 2003) . . . . . . . . . . . . . . . . . 13

Federal Power Comm'n v. Transcon. Gas Pipe Line Corp., 423 U.S. 326 (1976) . . . . . . . . . . . 4

Ford Motor Co. v. NLRB, 305 U.S. 364 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Heartland Hosp. v. Thompson, 328 F. Supp.2d 8 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . 4, 5

Heartland Reg'l Med. Ctr. v. Leavitt, 415 F.3d 24 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . 4, 5

Nat'l Tank Truck Carriers v. EPA, 907 F. 2d 177 (D.C. Cir 1990) . . . . . . . . . . . . . . . . . . . . . . 3

Southwest Ctr. for Biological Diversity v. Babbitt, 939 F. Supp. 49 (D.D.C. 1996) . . . . . . . . . 7

Southwest Ctr. for Biological Diversity v. Norton, 2002 WL 1733618, (D.D.C. July 29, 2002) 13

STATUTES

16 U.S.C. § 1532(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16 U.S.C. § 1533(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14, 15

16 U.S.C. § 1533(a)(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

FEDERAL REGULATIONS

50 C.F.R. § 424.11(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

**INTRODUCTION**

In our opening memorandum, we demonstrated that the United States Fish and Wildlife Service's (FWS or Service) remanded determination regarding Plaintiffs' petition to list the Florida black bear (black bear) fully complies both with this Court's 2001 opinion in Defenders of Wildlife v. Norton, CV 99-2072 (Dec. 13, 2001)(2001 Opinion) and D.C. Circuit precedent regarding the scope of agency remands. We also showed that it is fully supported by the administrative record. Rather than forthrightly addressing these showings, Plaintiffs devote much of their reply to describing purported catastrophic scenarios for the black bear that are neither true, nor relevant to the Court's inquiry in this case. The Court should not be distracted by Plaintiffs' dramatic overstatements of the bear population decline and habitat loss, which are simply designed to create a sense of doom where no such doom exists. In fact, the Court in 2001 *upheld* the Service's determination not to list the black bear based on all of the factors that the Service is required to consider, with the exception of only Factor D - the inadequacy of regulatory mechanisms. As to Factor D, the Court faulted FWS's record for not indicating "whether [it] *would have found* that the black bear was threatened" based only on the inadequacy of existing regulatory mechanisms, and it remanded the determination to the Service to determine whether the inadequacy of current regulatory mechanisms being undertaken and enforced warrant listing of the bear. 2001 Opinion at 22 (emphasis added). In its 2004 determination, the Service did exactly what the Court directed: it conducted an extensive review of the existing regulatory mechanisms as they existed in 1998, the time of the original petition determination, and determined that it "would have found" that the bear is not threatened based on the inadequacy of existing regulatory mechanisms as those mechanisms existed in 1998. The

remanded determination is a reasoned decision that is supported by the administrative record and that scrupulously follows the Court's instructions in 2001. While Plaintiffs plainly do not like this conclusion, their dissatisfaction is not sufficient to overturn it. Rather, the Court must uphold the Service's reasonable and supported remanded determination, and grant summary judgment to the Defendants.

## ARGUMENT

### I.    THE SERVICE'S 2004 REMANDED DETERMINATION FULLY COMPLIES WITH D.C. CIRCUIT PRECEDENT, THE COURT'S 2001 REMAND ORDER, AND THE ENDANGERED SPECIES ACT.

In our opening memorandum, we demonstrated that the Service permissibly interpreted the Court's opinion on remand as requiring it to reexamine the existing regulatory mechanisms as of 1998. See 2001 opinion at 19-22 ; see also Def. Memo at 19-23. In response, Plaintiffs claim that the Court's 2001 opinion deprived the Service of the discretion to respond to the Court's remand as it did, and instead expressly dictated that the Service undertake its assessment on remand based on present-day regulatory mechanisms. Plaintiffs' arguments, however, are premised on misunderstandings of the established law of the D.C. Circuit, as well as mischaracterizations of this Court's 2001 opinion.

First, it is well settled in this Circuit that agencies have broad discretion to determine the scope of their actions on remand. See County of Los Angeles v. Shalala, 192 F.3d 1005, 1011 (D.C. Cir. 1999) (when case is remanded to agency for further action, court may not retain jurisdiction to devise specific remedy for agency to follow). This is because federal courts do not have jurisdiction to specify a remedy that an agency must take. See id. Indeed, the Court is not permitted to tell an agency to follow a specific course of action. Nat'l Tank Truck Carriers

v. EPA, 907 F. 2d 177, 185 (D.C. Cir 1990).  In its opinion, the court sets forth the relevant legal

standard, tells the agency if it has violated that standard, and then instructs the agency to apply

the correct legal standard on remand.  See Federal Power Comm'n v. Transcon. Gas Pipe Line

Corp., 423 U.S. 326, 333 (1976) (judicial review of agency action ordinarily requires remand to

agency so that agency can exercise its discretion); Ford Motor Co. v. NLRB, 305 U.S. 364, 374

(1939)("The 'remand' . . . means simply that the case is returned to the administrative body in

order that it may take further action in accordance with the applicable law.").

 Consistent with this general authority, the D.C. Circuit has repeatedly held that an agency

properly fulfills its obligations on remand if it exercises its discretion simply to fill the analytical

gap identified in a court's remand order.  Thus, in Alpharma, Inc. v. Leavitt, 460 F.3d 1, 6-7

(D.C. Cir. 2006), the Court found that an agency's response on remand explaining the agency's

decision *rendered 13 years earlier* was perfectly appropriate and satisfied the agency's remand

obligations.  Contrary to Plaintiffs' assertion here, there was no suggestion by the Circuit that the

agency was required to answer the remand by conducting its analysis anew based on present-day

information.  Likewise, in Heartland Reg'l Med. Ctr. v. Leavitt (Heartland II), 415 F.3d 24, 29-

30 (D.C. Cir. 2005), the D.C. Circuit again upheld the agency's response on remand, finding that

all that the agency was required to do was fill the analytical gaps identified in the court's earlier

remand order.  As in the case here, the Heartland II court simply "remanded the case to [the

agency] 'for action consistent with the foregoing opinion.'"  Id. at 29(quoting Heartland Hosp. v.

Thompson (Heartland I), 328 F. Supp.2d 8, 12 (D.D.C. 2004)); compare with Opinion at 22

("The case is remanded to the Wildlife Service to determine, in a manner consistent with this

memorandum, whether the inadequacy of existing regulatory mechanisms warrants listing the

black bear as a threatened species"). Once again, there was no suggestion by the Circuit that on remand the agency was to make the determination anew based on new information. Rather, under the remand order "the only obligation it expressly imposed on the agency was to consider the two alternatives suggested during the prior comment period." Id.

And so it is here. In its 2001 opinion, the Court explained that the ESA required the Service to consider only existing, not future, regulatory mechanisms. The Court instructed the Service to redo its Factor D determination based on that standard. In turn, the Service in 2004 addressed the analytical gap identified by the Court; namely, it considered only existing regulatory mechanisms as of 1998. That is all that is required on remand. See Alpharma, 460 F.3d at 6; Heartland II, 415 F.3d at 29.

For their part, Plaintiffs cite no precedent in the D.C. Circuit, or otherwise, that prevents the Service from exercising its discretion to limit the regulatory mechanisms to 1998. Plaintiffs do not even address the Alpharma decision and do not meaningfully distinguish the Heartland decision. They simply re-iterate their misguided view that the Service was required to go beyond the Court's remand order and issue a new petition finding based on information developed after the date of the original Petition finding. However, as Alpharma and Heartland demonstrate, this is simply not the law.

Plaintiffs also claim that the Service's 2004 determination was "a paperwork exercise with no practical significance." Pls. Reply at 3. As Defendants made clear in their opening brief, the Service did exactly what the Court asked. In its 2001 opinion, the Court instructed the Service to look only at the existing regulatory mechanisms and "indicate whether the Agency would have found that the black bear was threatened" based only on those existing, not future or

speculative, mechanisms.   2001 Opinion at 22.  Far from a "paperwork exercise," the 2004

determination had practical effects.  Notably, it completed the 1998 listing determination for all

five listing factors.  Moreover, it concluded that existing regulatory mechanisms were not so

inadequate as to leave the black bear threatened or endangered.  Finally, and most importantly,

the 2004 determination and its record filled the gaps in the 1998 Factor D analysis that the Court

identified.  Thus, Plaintiffs' assertion that there was no practical significance of the 2004

decision lacks support.

Plaintiffs also argue that the Defendants never explained why the Court would want the

Service to examine the inadequacy of regulatory mechanisms that existed in 1998.  Again, that

argument lacks merit and simply ignores whole sections of the Defendants' opening brief that

specifically addressed why Defendants' interpretation of the Court's 2001 opinion was

reasonable.  Def. Memo at 23-28.  To reiterate, the Court upheld the Service's 1998 listing

decision based on listing factors A-C and E and determined that "based upon the new data [the

Service] gathered concerning the effects of habitat destruction, hunting, and roadkill, the

Wildlife Service reasonably concluded that these phenomena would not likely result in the black

bear becoming endangered in the foreseeable future."  2001 Opinion 18-19.  As Defendants

noted in their opening brief, the Court did not vacate the entire listing determination for the

Service to redo its listing determination.  Instead, the Court remanded for the agency to

"examine only regulatory mechanisms which are currently being undertaken and enforced."

2001 Opinion at 22.  Moreover, the Court did not specify the time period for the regulatory

mechanisms despite Plaintiffs efforts to characterize it as saying such.  More importantly, it is

flatly unreasonable to read the Court's opinion, as Plaintiffs would, to require the final

determination for four of the listing factors to be based on 1998 data and assessments, yet require and the remaining factor to be based on 2004 data.  Rather, the more reasonable reading of the 2001 opinion is that the Court directed that the analytical gaps from the 1998 finding filled.  If Plaintiffs desire a new finding based on present day information, they can file a new petition presenting that information.  What they cannot do is use this Court's remand as a vehicle for reopening such a finding.  In short, where the reviewing court has already upheld the "not warranted" determination based on Factors A-C and E as it has done here, it was a reasonable construction of the Court's remand for the Service to analyze only regulatory mechanisms that existed at the time it reviewed the other listing factors.

        The Service's approach was also consistent with ESA case law, despite Plaintiffs' argument to the contrary.  Plaintiffs assert that precedent in the ESA context, namely the opinions in Biodiversity Legal Found. v. Babbitt(BLF), 943 F. Supp. 23 (D.D.C. 1996), and Southwest Ctr. for Biological Diversity v. Babbitt(Southwest Center), 939 F. Supp. 49 (D.D.C. 1996), confirms that the Service did not have discretion to limit its analysis to 1998 regulatory mechanisms and, instead, compels the Service to consider regulatory mechanisms up to 2004.  Pls Reply at 11-14.  Plaintiffs reliance on those opinions is misplaced for several reasons.  First, as discussed in Defendants' opening brief, the BLF and Southwest Center courts did not dictate the time period within which the Service must look at existing regulatory mechanisms.  Rather, they instructed the Service on remand not to rely on future regulatory mechanisms in its Factor D analysis, and this Court in 2001 relied on those opinions for nothing more than that requirement.  Second, while the Service does not suggest here that it was improper for it to exercise its discretion to go beyond the four corners of a remand order, the Service does not believe that it is

required to do so.  Thus, simply because the Service sought extensions from the remand

deadlines in <u>BLF</u> and <u>Southwest Center</u> to allow time to consider a new forest plan does not

compel the Service here to consider regulatory mechanisms up to the date of its remand

determination.  In those cases, the Service's decision to consider a newly-published forest plan

was an exercise of discretion in response to a remand, and, as such, not particularly relevant

here.  In this case, the Service permissibly limited its analysis to existing regulatory mechanisms

as of 1998.  Neither <u>BLF</u> or <u>Southwest Center</u> require otherwise because those opinions do not

address whether the Service's approach in response to the remand is permissible.   The Service's

remanded determination, therefore, should be upheld.

**II.    THE SERVICE CORRECTLY CONSIDERED AND DETERMINED THAT
EXISTING REGULATORY MECHANISMS ARE NOT SO INADEQUATE AS
TO WARRANT LISTING THE BLACK BEAR AS THREATENED OR
ENDANGERED**.

As explained in the Service's opening brief, the Service properly applied the ESA's

requirement to determine if a species is threatened or endangered because of "the inadequacy of

existing regulatory mechanisms." 16 U.S.C. § 1533(a)(1)(D).  Plaintiffs' argument in response

does not undercut this showing.  Rather, as is shown below, each of Plaintiffs' arguments is

without merit, and is based for the most part on Plaintiffs' contortions of statements in the

administrative record and on Plaintiffs' misunderstanding of the law governing listing of species

under the ESA.

**A.    Plaintiffs' Statement of the Applicable Law is Incorrect**.

As they did in their opening brief, Plaintiffs continue to misstate the applicable standard

under Factor D.  Plaintiffs claim that the Service must assess whether existing regulatory

mechanisms are adequate to stop any threats to the black bear.  Pls. Reply at 26-27, 32.   The

proper inquiry, however, is whether the inadequacy of existing regulatory measures leads the Service to conclude that the black bear is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of [their] range" or "in danger of extinction throughout all or a significant portion of [their] range . . ."  16 U.S.C. § 1532(6), (20). This is an extremely important distinction, and one that Plaintiffs have repeatedly gotten wrong in their briefs.

Plaintiffs' error is seen most dramatically in its repeated focus on habitat loss.  Pls. Reply at 17-20.  Plaintiffs incorrectly suggest that if existing regulatory mechanisms do not "stem habitat loss," the Service must list the black bear.  Pls. Reply at 18.  Plaintiffs, however, fail to cite any authority for this alleged requirement, and none exists.  Again, the proper inquiry, based on the plain language of the ESA, is whether existing regulatory mechanisms are so inadequate to address habitat loss when that loss of habitat would lead the Service to conclude the black bear meets the definition of a threatened or endangered species.  See Ctr. for Biological Diversity v. FWS, 402 F. Supp. 2d 1198, 1209 (D. Or. 2005).

Another critical part of the ESA listing analysis that Plaintiffs continue to misunderstand and misstate is how the listing factors relate to one another.  The ESA states that

> [T]he Secretary shall by regulation promulgated in accordance with subsection (b) of this section determine whether any species is an endangered species or a threatened species because of any of the following factors:
>
> (A) the present or threatened destruction, modification, or curtailment of its habitat or range;
>
> (B) overutilization for commercial, recreational, scientific, or educational purposes;
>
> (C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1). The implementing regulatory language states: "A species shall be listed or reclassified if the Secretary determines, on the basis of the best scientific and commercial data available after conducting a review of the species' status, that the species is endangered or threatened because of any one or a combination of the following factors . . ." 50 C.F.R. § 424.11(c) (listing five statutory factors).   The statutory and regulatory language demonstrates that listing a species is appropriate when one or more of the five factors leaves the species threatened or endangered.  Factors A-C and E all address biological issues that may leave a species threatened or endangered.   Factor D looks at whether the existing regulatory mechanisms are inadequate to counteract the degree of each biological threat under Factors A-C and E.

Here, the Service was in a unique, if not odd, position because the Court in 2001 upheld its analysis and determinations with regard to Factors A-C and E.  Thus, it is not necessary for the Service to revisit whether habitat loss under Factor A threatens the black bear to the point of becoming threatened or endangered.  The only inquiry that the Service was required to conduct was whether existing regulatory mechanisms were inadequate to counter biological threats identified under Factors A-C and E.  Any suggestion otherwise is merely Plaintiffs' attempt to reopen those other factors, in particular Factor A.  As noted in Defendants' opening brief, this lawsuit is not the proper venue to revisit whether recent habitat loss leaves the black bear threatened or endangered.  Rather, if there is new information on habitat loss that is relevant, Plaintiffs may renew the petition to list the black bear with that new information.

In contrast to the standard that Plaintiffs espouse, the plain language of the statute and the regulation require the Service to list a species only if it determines that the existing regulatory mechanisms are inadequate to counter a threat that would make the black bear meet the definition of threatened or endangered. Plaintiffs' interpretation and any arguments to the contrary are simply wrong.

> **B.**     **The Service Properly Determined That Existing Regulatory Measures Are Not Inadequate To Prevent the Black Bear From Becoming Threatened or Endangered.**

Plaintiffs concede that, in its 2004 determination, the Service set forth the standard for considering regulatory mechanisms, analyzed those mechanisms in accordance with that standard, and then determined whether the inadequacy of those mechanisms required listing the black bear. Pls. Reply at 18, 20. Plaintiffs, nonetheless, maintain that the 2004 determination violated the ESA. That argument is based simply on Plaintiffs' belief that the Service was required to analyze regulatory mechanisms and threats to the black bear as of 2004. This is the same argument as the one advanced above about Defendants' interpretation of the Court's 2001 opinion, only slightly re-packaged to support the allegation that Defendants violated the ESA. Yet, Plaintiffs do not, and cannot, offer a single citation to support their claim that the ESA compels the Service to analyze regulatory mechanisms up to 2004. Thus, for the same reasons stated above, the claim is unpersuasive in this context as well.

As explained in Defendants' opening brief, the Service conducted a thorough analysis of regulatory mechanisms as of 1998 to judge whether those mechanisms were so inadequate as to leave the black bear threatened or endangered. 69 Fed. Reg. 2100(Jan. 14,2004), A.R. 2. In their reply brief, Plaintiffs mis-characterize the Service's 2004 decision as relying heavily on

particular regulatory mechanisms.  Pls. Reply at 6-7, 25-26.   For example, Plaintiffs claim that the Service relied solely on the fact that the Forest Service was legally required to maintain viable populations of species to determine that regulatory mechanisms were not inadequate to protect bear habitat in national forests.  Id.  But in fact, the Forest Service's viable population requirement was only one of multiple regulatory mechanisms governing species protection in national forests that led the Service to conclude those mechanisms were not inadequate.  69 Fed. Reg. at 2105-2106, A.R. 6-9.  Further, the Service determined that bear habitat in national forests was secure for many reasons not acknowledged by Plaintiffs, including the fact that the habitat in the national forests are public lands protected from development, national forests are managed to protect species, and specific forest management plans that include species protections govern specific actions within national forests.

Similarly, Plaintiffs imply that because the Service evaluated the Development of Regional Impact (DRI) regulations and state land management plans in its 2004 determination, that determination is  flawed.  Pls. Reply at 25-26.  That claim is unfounded.  Simply because the Service analyzed those mechanisms does not mean that it impermissibly relied on them in its determination.  Indeed, while the DRIs and the state management plans provide regulatory protections to bear habitat, they were only a few, among many, regulatory mechanisms that underpinned the Service's determination.  69 Fed. Reg. at 2105-2108, A.R. 6-9; Def. Memo at 16-17.

In sum, a review of the record demonstrates that the Service provided ample analysis of the inadequacy of existing regulatory mechanisms.

**C.    The Service Was Not Required To Show That Regulatory Measures Counteract All Habitat Loss**

-12-

Plaintiffs' primary complaint is that the Service's remanded determination violates the ESA because, in Plaintiffs' view, the Service must ensure that regulatory mechanisms counteract habitat loss and fragmentation in order not to list the black bear.  However, as demonstrated in our opening memorandum and which has not been responded to in the Plaintiffs' Reply, the ESA itself contains no such requirement.   In fact, courts have recognized that the ESA does not require the regulatory mechanisms to be perfect in stopping or reversing threats to the species altogether.  See Ctr. for Biological Diversity v. FWS, 402 F. Supp. 2d at 1209; Ctr. for Biological Diversity v. Badgley, 335 F.3d 1097, 1100 (9th Cir. 2003); Southwest Ctr. for Biological Diversity v. Norton, Civ. No. 98-934 (RMU/JMF), 2002 WL 1733618, at *13 (D.D.C. July 29, 2002).  Here, some degree of black bear habitat loss is tolerable because, as the Service concluded in 1998, the black bear is secure on currently-protected public land.  63 Fed. Reg. 67614-16 ("We believe there are currently adequate levels of protection and management authority to ensure survival of the Florida black bear on the four major public land areas through the foreseeable future;" "We believe that there are four viable Florida black bear populations, Apalachicola NF, Ocala NF, Okefenokee NWR-Osceola NF, and Big Cypress National Preserve, *which are secure on public conservation lands*, and will be maintained on those lands into the foreseeable future."(emphasis added)).  Thus, the Service looked at whether regulatory mechanisms addressed habitat loss in general, but not whether those regulatory mechanisms stopped all habitat loss.   In the absence of an ESA requirement that the regulatory mechanisms must halt or reverse all threats, the Service reasonably concluded that existing regulatory mechanisms were not inadequate to counteract the amount of habitat loss that would cause the black bear to meet the definition of threatened or endangered.

-13-

In response, Plaintiffs contend that once the Service has conceded that any level of habitat loss exists, it must ensure that regulatory mechanisms stop that loss or it must list the black bear as threatened or endangered. Plaintiffs' argument cannot withstand scrutiny.

First, the fact that habitat loss poses a "threat" does not answer the relevant inquiry here. The fact that something merely poses a threat to a species, standing alone, does not dictate that the species must be listed. As stated above, the relevant question is whether regulatory mechanisms are inadequate to counteract threats that place the species as a whole *in danger of extinction* or makes it *likely to become an endangered species*. 16 U.S.C. § 1533(a)(1), 1532(6), (20) (emphasis added). Here, while acknowledging that habitat loss can be a threat to the black bear, the Service reasonably concluded that regulatory mechanisms were not inadequate to prevent habitat loss from putting the black bear in danger of extinction. Thus, Plaintiffs' attempt to equate the mere existence of a potential threat to a species with meeting the statutory requirement for listing is misguided.

Second, Plaintiffs continue to ignore basic facts in this case that undermine their argument. Plaintiffs neglect to acknowledge that in 1998 the Service determined that habitat loss and fragmentation did not leave the black bear threatened or endangered. 63 Fed. Reg. 67614-16. Despite the Service's clear statements in its 1998 determination, Plaintiffs blatantly disregard the fact that the Service determined that the four core populations were secure on protected public lands. Pls. Reply at 27, Footnote 11. Further, Plaintiffs continually overlook the fact that the Court upheld that determination under Factor A in 2001. 2001 Opinion at 16-18. Indeed, Plaintiffs gloss over the Service's Factor A determination and the Court's opinion upholding it as a back-door way to reopen the 1998 listing determination on Factor A.

-14-

To support their erroneous view of how the regulatory mechanisms must stem habitat loss, Plaintiffs selectively site information in the record about private habitat loss and fragmentation. That focus is misplaced because in 2004 the Service did, in fact, consider whether existing regulatory mechanisms address private habitat loss and fragmentation. But, it did so knowing that the four core populations were secure on protected public land. 63 Fed. Reg. 67614-16. For example, Plaintiffs cite a letter from the record that claim up to 200,00 acres of Florida forests are lost each year. Pls. Reply at 27. Then, Plaintiffs rely on that uncertain number to speculate that those acres are in core bear habitat. Id. Yet, the letter's author provides no citation that supports his estimate of loss, and there is no other data in the record to corroborate his assertion. Letter from J. Cox, Wildlife Biologist, FWS, to Dr. Jamie Clark, Director, FWS (Nov. 24, 1998), A.R. 6439. Further, Plaintiffs suggest that a purported increase in private land development in the Florida panhandle indicates that the Apalachicola population might not be secure and that the Service improperly failed to consider this information. Pls. Reply at 2, 23. But, Plaintiffs neglect to note that in 1998 the Service concluded, and the Court upheld, that the Apalachicola population numbered over 400 bears that were secure on over 4,000 km2 of protected habitat which according to the Florida Fish & game Commission meant that the population had a ninety-five percent chance of survival for 200 years. 63 Fed. Reg. 67615-16; 2001 Opinion at 15-16. Moreover, in its 1998 determination, the Service noted, and the Court acknowledged in 2001, that public land acquired will further protect the Apalachicola population from any pressure from private land development. Id. Finally, Plaintiffs imply that if habitat fragmentation separates the black bears in Wekiva GEOPark from the ones in Ocala National Forest that somehow the Ocala population will not be secure. Pls. Reply 28-30. The

Service, however, in its 1998 determination decided that the Ocala population was secure because there were over 600 bears and public land was adequate to support the population. 63 Fed. Reg. 67615-16. Also, the Service in 2004 noted that forest management for both the Apalachicola National Forest and the Ocala National Forest "should continue to maintain quality forested habitats that will directly ensure the viability" of those populations throughout the foreseeable future. 69 Fed. Reg. 2106. Thus, the Service analyzed the inadequacy of regulatory mechanisms in light of the fact that habitat loss did not pose a significant enough threat to the black bear to leave it threatened or endangered. Indeed, this analysis would have applied whether the Service was looking at regulatory mechanisms in 1998 or 2004. Regardless of what limit the Service applied to its review of regulatory mechanisms, the threat to the black bear from habitat loss remained unchanged because the Service determined, and the Court upheld, that the black bear is secure on protected public lands. 63 Fed. Reg. 67614-16; 2001 Opinion at 16. Therefore, Plaintiffs' suggestion that the Service's 2004 determination violates the ESA because it fails to analyze how regulatory mechanisms stem habitat loss on private lands is without merit. Given the Service's determination on the degree of threat to the black bear from habitat loss, it was reasonable for the Service to conclude that regulatory mechanisms were not inadequate to protect the black bear from becoming threatened or endangered because of habitat loss. The Service's 2004 determination must, therefore, be upheld.

## CONCLUSION

For the foregoing reasons, the Service's remanded determination should be upheld. The administrative record and the determination itself demonstrate that the Service carefully considered the relevant factors and articulated a rational connection between the facts found and

the conclusion reached.  Therefore, the Defendants respectfully request that the Court grant

summary judgment in their favor.

Dated this 15th day of February, 2006.


Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General


*s/ Courtney Taylor*
_____
Courtney Taylor, Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box. 7369
Washington, D.C.  20044-7369
(202) 353-7548
Attorney for Defendants


OF COUNSEL

Michael P. Stevens, Attorney-Adviser
U.S. Department of the Interior
Office of the Regional Solicitor
75 Spring Street, S.W., Suite 304
Atlanta, Georgia   30303